6608

BRITISH-AMERICAN MORTGAGE CO. v. JONES, COMPTROLLER GENERAL.

1. A FOREIGN CORPORATION exercising its corporate functions in this State is doing business here. The British-American Mortgage Co. whose business it is to loan money on real estate mortgages does business in this State when it pays in New York a draft attached to a note and mortgage on lands executed in this State upon application forwarded by resident borrower. .

2. CONSTITUTION.—A FOREIGN CORPORATION having paid in 1894 the license required by the act of 1893, 21 stat., 409, to do business in this State and having paid such license annually since and fully complied with such act, may be required by another act (24 stat., 462) to pay an additional annual tax based on the value of the property used by such corporation in this State in the conduct of its business here.

Petition in the original jurisdiction of this Court by British American Mortgage Co. against A. W. Jones, Comptroller General, to enjoin him from enforcing the provisions of the act of 1904, 24 stat., 462. This cause was first argued in January, 1907, and opinion published in 76 S. C., 218. Upon petition of respondent, reargument was ordered and had at April term, 1907.

*Mr. B. L. Abney,* for petitioner, cites: *Performance by petitioners of the requirements of the act of 1893 and doing business in the State thereunder make a contract between it and the State:* 6 Ency., 1722; 3 Wall., 430; 31 Ala., 98; 30 F., 649; 108 N. W., 594, 610; 41 L. R. A., 557. *Failure of petitioner to file its declaration within the time stated in the act of 1893 does not deprive it of the contract relation:* 110 U. S., 1; 3 Mass., 232; 12 L. R. A., 358; 86 S. W., 392; 111 N. W., 1074; 70 Ark., 525; 68 N. J., 534; 139 Fed., 413; 15 U. S., 322; 16 C. C. A., 353. *The act does not place petitioner on a parity with all natural born citizens of the States of the U. S.:* 76 S. C., 225.

*Attorney General, J. Frazer Lyon,* contra, cites: The act *of 1904 does not violate any contract between petitioner and the State:* Cool. Const. Lim., 678; 1 Cool. on Tax., 129; 4 Pet., 514; 21 Wall., 492; 98 U. S., 564; 5 Am. R. 353; 143 U. S., 195; 116 U. S., 231; 101 U. S., 528; 92 U. S., 665; 100 U. S., 497; 116 U. S., 665; 15 Wall., 457; 174 U. S., 439; 27 S. C., 391. *As to construction of statutes:* 22 Cyc., 1603; 26 Ency., 619; Endlich on Int. of Stats., 252. *The effect of the act of 1893 was to require petitioner to make a new contract with the State each year:* 119 U. S., 119; 200 U. S., 446; 202 U. S., 7. *State may discriminate between foreign and domestic corporations:* 10 Wall., 410; 125 U. S., 181; 27 Sup. Ct. R., 198.

August 2, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY.  This is an application to the Court, in the exercise of its original jurisdiction, for an order of injunction restraining the Comptroller General from enforcing the provisions of an act entitled "An act to require the payment of annual license fees by corporations doing business in this State, and reports to the Comptroller General" (24 stat., 462).

The petitioner is a foreign corporation, the principal business of which is lending money upon mortgages of real estate.

On the 26th of November, 1894, the petitioner filed a declaration in the office of the Secretary of State, in pursuance of an act entitled "An act to declare the terms on which foreign corporations may carry on business and own property within the State of South Carolina," approved 23d December, 1893.

In said declaration, the petitioner stated, that it was the owner of property in this State—referring to the investments made by it upon mortgages of real estate situate in said State—and designated as its place of location in South Carolina, the office of E. K. Palmer, in the city of Columbia, and named said Palmer as its agent, upon whom process could be served.

The manner of transacting business is as follows: "A person in South Carolina, who desires to make a loan from this company forwards his application to the home office in the city of New York, where the application is accepted or rejected.  If accepted, the notes and mortgages are prepared in New York, and sent to the applicant in South Carolina, who executes them in South Carolina, and forwards them to New York with draft attached, which draft is paid in New York, according to the terms of the contract, the debt is payable in New York, and as a matter of fact, is collected and paid in that city."

The attorneys of the respective parties to this proceeding, entered into the following agreement: "It is agreed that this case be heard by the Supreme Court upon its merits, upon

the facts as stated in the petition, and accompanying exhibits, and in the return and answer."

The first question that will be considered is, whether the facts show, that the petitioner was doing business in this State.

Section 1787 of the Code of Laws is as follows: "It shall be a further condition precedent to the right of any such (foreign) corporation to do business in this State, that it shall be taken and deemed to be the fact, irrebutable, and part and parcel of all contracts entered into, between such corporation and a citizen or corporation of this State, that the taking or receiving, from any citizen or corporation of this State of any charge, fee, payment, toll. impost, premium, or other moneyed or valuable consideration, under or in performance of any such contract, or of any condition of the same, shall constitute the doing of its corporate business within this State, and that the place of the making and of the performance of such contract, shall be deemed and held to be within this State, anything contained in such contract, or any rules or by-laws of such corporation, to the contrary notwithstanding."

This section clearly shows that the petitioner was doing business in this State.

Even if this statute had not been enacted, the exercise by the petitioner of the corporate functions hereinbefore mentioned, would have constituted the doing of business in this State. *Chattanooga Nat. B. & L. Assn.* v. *Denson,* 189 U. S., 408, in which it was decided that the granting of a loan by a Tennessee building and loan association to a citizen of Alabama, upon the latter's signed application, solicited by a traveling agent for the association, and the taking of a note and mortgage executed within the State by the borrower, as security, constitute, regardless of the form and terms of such instruments, the doing of business in the State, within the meaning of the Alabama Constitution and statutes, requiring foreign corporations doing any business within the State

to designate a local agent for service of process and to have a known place of business within the State.

The attorneys for the petitioner contend, that the case just mentioned is materially different from that under consideration, in that there was no agent of the petitioner in this State soliciting business. The Court, however, did not rest its decision upon that fact, but on the ground that the foreign corporation exercised within the State of Alabama, some of the functions for which it was created. The Court used this language, at page 415: "Counsel has discussed at some length, the *situs* of contracts, and by the law of what place they are determined. We think, however, that the discussion is not relevant. It withdraws our consideration from the Constitution and statute of Alabama; and, it is manifest, the contention based upon it, if yielded to, would defeat their purpose. The prohibition is directed to the doing of any business in the State, in the exercise of corporate functions; and there can be no doubt, that petitioner considered that it was exercising such functions, in the State. * * * The application of Denson was presumably solicited as other applications were, and if what was done in pursuance of it, did not constitute doing business in the State, the effect would be, as expressed by the Circuit Court of Appeals, that petitioner and other foreign associations, engaged in the same business of loaning money on real security, may safely flood the State of Alabama with soliciting agents, make all the negotiations for the loans, take real estate securities therefor, and fully transact all business pertaining to their corporate functions, as though incorporated therein, and yet neither be obliged to have a known place of business, or any authorized agent within the State, nor pay any license tax or fee, as required of non-resident corporations doing business therein."

The next question to be determined is, whether the act of 1904, as hereinafter mentioned, is in violation of the contract by which the petitioner was permitted to do business in this State.

When the petitioner was granted permission to carry on its business in this State, the acts of 1888 and 1892 were of force, certain provisions of which were incorporated in the Code of Laws as section 1800, and are as follows:

2 "Every foreign insurance company of any class—fire, life, marine, surety, security, guarantee, hailstorm, live stock, accident, plate glass, and other like insurance companies—foreign land associations, foreign building and loan associations, foreign banking associations, and all other like classes of like business not incorporated under the laws of South Carolina, except national banks and except benevolent institutions organized under the grand lodge system, shall each, before transacting any business in this State, pay an annual license fee of one hundred dollars to the Comptroller General, on or before the thirty-first day of March in each year, to be deposited by him in the treasury of the State.

"It shall be unlawful for any such foreign companies, as are required to pay license fees, to transact any business in this State, until they shall have and keep some duly appointed resident agent in this State, on whom legal process may be served, so as to bind the company he represents, and service of process upon this agent at his main office, shall be sufficient to give jurisdiction to the Court issuing same, in any county in this State.

"The license issued by the Comptroller General, shall give to the company obtaining the same, power and authority to appoint any number of agents to take such risks, or transact any business of insurance in each and every county of the State, and the same shall be so granted as to expire on the 31st of March of each year. But the Comptroller General must be notified of such appointment before such agent takes any risks or transacts any business, as aforesaid, giving the postoffice address, residence and a certified copy of the resolution, appointing such agent or agents, duly signed by the president and secretary of such company." The petitioner paid the license fee therein mentioned.

The act of 1893 (21 Stat., 409), was effective, at the time the petitioner was allowed to do business in this State, and contains the provision, "that foreign corporations duly incorporated under the laws of any State of the United States, or of any foreign country, in treaty and amity with the said United States, are hereby permitted to locate and carry on business within the State of South Carolina, in like manner as the natural born citizens of the States of the United States, or of such foreign country might do under the law, existing at the time, subject nevertheless, to the terms and conditions in this act hereafter set forth." This provision became section 1779 of the Code of Laws. Section 7 of the act of 1893 was as follows: "All and every such foreign corporation carrying on business or owning property in this State, shall be subject to the laws of this State, but nothing herein contained shall be construed to permit any such foreign corporation, to exercise any franchise or enjoy any privilege or immunity, other than the right to own property and carry on business in like manner as individuals, natural born citizens of such State of the United States, or of foreign countries, might do, and subject to the terms and conditions of this chapter."

This is now section 1790 of the Code of Laws. The Act of 1893 was amended in 1904 by an Act entitled, "An Act to amend section 1779 of the Civil Code (being vol. I, Code of Laws 1902), relating to the formation of foreign corporations" (24 stat., 435), so as to read as follows: "Foreign corporations duly incorporated under the laws of any State of the United States, or of any foreign country in treaty and amity with the said United States, are hereby permitted to locate and carry on business within the State of South Carolina, in like manner and with like powers as corporations of like kind and class created under the laws of this State, subject, nevertheless, to the terms and conditions in this chapter hereafter set forth."

Sections 4 and 5 of the Act of 1904 (the title of which has already been set out) are as follows: Section 4. "Every

29—77

corporation organized under the laws of this State to do business for profit, other than railroad companies, express companies, street railway companies, navigation companies, water works companies, power companies, light companies, telephone companies, telegraph companies, parlor, dining and sleeping car companies, shall, upon the filing of the report required of them in section 1, pay to the State Treasurer, on or before the first day of April, in each year, an annual license fee of one-half of one mill upon each dollar paid in to the capital stock of said corporation, said license fee to be not less than five dollars in any case.

Sec. 5. "Upon the filing of the report required of foreign corporations in section 2, the Comptroller General shall, from the facts thus reported, and any other facts coming to his knowledge, determine the value of the property of such corporation used within this State by them in the conduct of their business, and shall file a statement of the value so determined, with the license tax payable thereon, with the State Treasurer, who shall charge and collect from such companies, in addition to the initial fees provided for in the Code of Laws for South Carolina, in 1902, and acts amendatory thereto, an annual license fee of one-half mill upon each dollar of the value of the property of such corporation used within this State in the conduct of its business."

The petitioner's attorneys rely upon the case of *Am. S. & R. Co.* v. *Colorado ex rel. Lindsley,* 27 Sup. Ct. Rep., 108, in which it was held that a right to do business in the State, without being subject to any greater liabilities than those imposed upon domestic corporations, was acquired by a foreign corporation, upon its admission into the State of Colorado, under the laws then of force, which subjected foreign corporations to the liabilities, restrictions and duties imposed upon domestic corporations of like character, and such right was impaired by an act of that State subsequently enacted, which required such corporations to pay an annual

license fee in double the amount of that imposed upon domestic corporations.

The Court uses this language: "A provision in a statute of this nature, subjecting a foreign corporation to all the liabilities, etc., of a domestic one of like character must mean that it shall not be subjected to any greater liabilities than are imposed upon such domestic corporation. The power to impose different liabilities was with the State at the outset. It could make them greater or less than in case of a domestic corporation, or it could make them the same. Having the general power to do as it pleased, when it enacted that the foreign corporation, upon coming in the State, should be subjected to all the liabilities of a domestic corporation, it amounted to the same thing as if the statute had said the foreign corporation should be subjected to the same liabilities. In other words, the liabilities, restrictions and duties upon domestic corporations constitute the measure and limit of the liabilities, restrictions and duties which might thereafter be imposed upon the corporations admitted to do business in this State. It was not a mere license to come in the State and do business therein, upon payment of a sum named, liable to be revoked or the sum increased at the pleasure of the State. It was a clear contract that the liabilities, etc., should be the same as the domestic corporation, and the same treatment in that regard should be measured out to both.

"If it were desired to increase the liabilities of the foreign, it could only be done by increasing those of the domestic corporations, at the same time and the same extent. * * * Nor is this a case where the power given by the State Constitution to the General Assembly to alter, amend or annul a charter is applicable. The act does not alter the charter, or annul or amend it. It simply increases the taxation which up to the time of its enactment had been imposed upon all foreign corporations doing business in the State * * *. It is unnecessary to refer to the many cases cited by both parties hereto. Some of them refer to the question

as to the nature of such tax, while others decide upon the facts appearing in them, whether there was a contract or not. As already stated, the name of the tax or its kind is not important, so long as it is plain that the act of 1902 increases the liabilities of the foreign corporation over those which obtain in that of the domestic.

"And in regard to the case of contract, while the principle that a contract may arise from a legislative enactment has been reiterated times without number, it must always rest for its support in the particular case upon the construction to be given the act, and in this case we are greatly aided by the former cases regarding taxation and legislative contract."

The respondent's attorneys, however, contend that section 7 of the act of 1893, hereinbefore mentioned. prescribes the terms upon which foreign corporations were permitted to do business in this State, to wit: that they should be subject to the laws in like manner as corporations chartered under the laws of South Carolina.

It will be seen by reference to sections 1 and 7 of said act that they are inconsistent, and it would be difficult to reconcile them.

It seems that the legislature did not entertain the view that it placed foreign and domestic corporations on the same footing, hence the necessity for passing the act of 1904 (page 435) amending it.

But conceding that such was the effect of section 7, the act of 1904 (page 462) distinguishes between domestic and foreign corporations.

Section 4 of that act provides for an annual license fee of one-half of one mill upon each dollar paid in to the *capital stock* of a domestic corporation, while in the case of a foreign corporation, it is required, in addition to the initial fees, to pay a license fee of one-half of one mill upon each dollar of the *value of the property,* used within the State in the conduct of its business.

But the respondent's attorneys also contend that the State has the right to prescribe the conditions upon which foreign corporations shall be permitted to do business in the State, even when they are more burdensome than those imposed upon domestic corporations (which cannot be denied); that the license granted the petitioner in 1894 expired on the 31st of March, 1895, and when the license was granted in each subsequent year, it expired on the 31st of March of the year next ensuing; that the granting of the license in each year was a new contract, and when in 1904 the petitioner took out a new license, it was subject to the provisions of the act of 1904 (page 462), which was approved on the 29th of February, 1904. They cite the cases of *Security L. Ins. Co.* v. *Prewitt,* 200 U. S., 446; *Security L. Ins. Co.* v. *Prewitt,* 202 U. S., 246; and *Ph. F. Ins. Ass'n* v. *New York,* 119 U. S., 110.

In the last mentioned case the Court uses this language, page 119: "This Pennsylvania corporation came into the State of New York to do business by the consent of the State, under this act of 1853, with a license granted for a year, and has received such license annually, to run for a year. It is within the State for any given year under such license, and subject to the conditions prescribed by statute. The State, having the power to exclude entirely, has the power to change conditions of admission at any time, for the future, and to impose as a condition the payment of a new tax, or a further tax as a license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction. It is outside, at the threshold, seeking admisison, with consent not yet given."

After most careful consideration we have reached the conclusion that this objection must be sustained.

It is also contended that the petitioner had not complied with the requirements of the statute in 1894 when it

received a license, and that it has no right to carry on its business in this State.

The objection, however, cannot be sustained, as each license was a new contract, and the petitioner complied before the last license was granted.

It is the judgment of this Court, that the petition be dismissed.