(No. 13899.—Writ awarded.)

THE PEOPLE *ex rel.* The City of Chicago, Petitioner, *vs.* CHARLES V. BARRETT *et al.* Respondents.

*Opinion filed June 20, 1923.*

1. INSURANCE—*net receipts of foreign casualty insurance companies are not taxable under act of 1869.* Section 30 of the Fire and Marine Insurance act of 1869, providing for taxation of the net receipts of foreign insurance companies, has not been extended to include foreign companies dealing in other kinds of insurance than those to which the act applies, either by the amendment of 1879, by the License act of 1879, or by the act of May 31, 1879, which requires "all" insurance companies to comply with the general fire and marine insurance laws. (*Fidelity and Casualty Co.* v. *Board of Review,* 264 Ill. 11, followed.)

2. STARE DECISIS—*a decision should not be overruled by implication.* A decision should not be overruled merely on the basis of remote implication.

3. TAXES—*statute creating a tax cannot be extended by implication.* If there is any doubt whether the language of an act is intended to authorize the taxation of certain property, such language will not be extended beyond its clear import.

4. SAME—*tax on net receipts of foreign insurance companies is not a personal property tax—reduction.* The tax imposed on the net receipts of foreign insurance companies under section 30 of the Fire and Marine Insurance act of 1869 is not a personal property tax but is a tax on the business of insurance and is not subject to reduction as a property tax, and where such reductions have been made in the past the companies are not relieved of their obligation to pay the full tax, and as the duty of assessing is a continuing one they may be required to enter the net receipts on the property returned in past years.

5. SAME—*general agent's return of net receipts of an insurance company should designate local agencies.* Section 30 of the Fire

and Marine Insurance act of 1869, providing that the return of net receipts of foreign insurance companies for purposes of taxation shall be made to the proper officer of the county, town or municipality in which the agency is established, contemplates that such municipality shall have the benefit of the tax, and the return should be made to the assessor of the town where the agency is located, and where the return is made by the general agent to the board of review it should show the location and net receipts of the various agencies.

6. SAME—*what constitutes net receipts of a foreign insurance company.* The net receipts of a foreign insurance company taxable under section 30 of the Fire and Marine Insurance act of 1869 include receipts arising out of all insurance business, including sales to parties either within or without the county, town or municipality where the agency is located, but the operating expenses of the company properly attributed to the respective localities for which the returns are made may be deducted.

7. SAME—*form prescribed by tax commission should be used in making return of net receipts of insurance company.* While the tax on the net receipts of foreign insurance companies under section 30 of the Fire and Marine Insurance act of 1869 is not assessed under the Revenue act, the board of review should require the agents of such insurance companies, in making returns of net receipts, to use the form prescribed by the tax commission; but the board may have its own method of investigation to determine the true net receipts and is not required to use any particular set of rules prescribed by a municipality.

8. MANDAMUS—*board of review has authority to compel making of returns of net receipts of insurance companies for taxation.* The board of review has authority to compel by *mandamus* the making of returns of the net receipts of foreign insurance companies for the purpose of taxation under section 30 of the Fire and Marine Insurance act of 1869, and the board itself may be compelled by writ of *mandamus* to require such returns to be made. (*People* v. *Kent,* 300 Ill. 324, followed.)

DUNCAN, J., dissenting.

ORIGINAL petition for *mandamus.*

SAMUEL A. ETTELSON, and BULKLEY, MORE & TALLMADGE, for petitioner.

ROY MASSENA, (GEORGE A. COOKE, JAMES G. CONDON, WEYMOUTH KIRKLAND, and DANIEL J. SCHUYLER, of counsel,) for respondents.

OSCAR B. RYON, BATES, HICKS & FOLONIE, CHARLES S. DENEEN, and CHARLES E. WOODWARD, *amici curiæ.*

COOKE, SULLIVAN & RICKS, RYAN, CONDON & LIVINGSTON, McCORMICK, KIRKLAND, PATTERSON & FLEMING, and SCHUYLER & WEINFELD, for certain insurance companies.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an original petition for *mandamus* in this court against respondents, constituting the board of review of Cook county, seeking to compel the performance of certain acts on the part of the board which the petition avers the law requires it to do in the proper enforcement of section 30 of the act of 1869 relating to fire, marine and inland navigation insurance companies, (Laws of 1869, p. 209, 228,) and concerning the taxation of net receipts of such insurance companies not organized under the laws of Illinois but doing business in this State under charters and the authority of other States or of the foreign governments and having agencies in Cook county. The respondents filed an answer setting out the action taken by them concerning the listing of net receipts of such insurance companies doing business in Cook county and denying that they had neglected or failed to do their duty under the law. The answer practically admits or denies all the facts alleged in the petition that are material in the determination of the merits of the petition. It was stipulated by the parties that the case be heard on the petition and the answer without evidence. It therefore follows that on this record the questions presented for decision are questions of law.

The issues involved in this case have been elaborately and vigorously discussed in detail and at great length in the various briefs and arguments. Counsel representing certain foreign casualty, surety and fidelity insurance compa-

nies have filed briefs and arguments, and counsel for foreign fire, marine and inland navigation insurance companies have filed a brief and argument as *amici curiæ,* and counsel for the city have filed separate reply briefs in answering the arguments of the casualty and fidelity insurance companies and a separate argument in reply to the brief of counsel for foreign fire, marine and inland navigation insurance companies.

Section 30 of the Fire, Marine and Inland Navigation Insurance act of 1869, as amended in 1879, reads as follows: "Every agent of any insurance company, incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes, State, county, town and municipal—that other personal property is subject to at the place where located; said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: *Provided,* that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax, or license fee, not exceeding two per cent in accordance with the provisions of their respective charters, on the gross receipts of such agency, to be applied exclusively to the support of the fire department of such city." (2 Hurd's Stat. 1921, chap. 73, p. 1803.)

The amendment to section 30 of the Insurance act of 1869 as just quoted makes very slight changes in the original section 30 of the law of 1869, and the amendment in no way bears on the issues involved in this hearing.

The petition makes the charge, which is denied by the answer, that a large number of insurance companies other than life, operating under authority of other States or of

foreign governments, having agencies in Cook county subject to amended section 30, have refused or failed to return their net receipts, in accordance with this section, for the purpose of taxation for the year ending April 30, 1920, and for a number of years prior thereto, and that respondents have failed and refused to compel them to make proper returns for such years. The legal question thus presented for decision, and the chief legal question in this case, is as to what foreign insurance companies are subject to the taxes under this section. Particularly the question is whether or not Lloyd associations, casualty companies, companies doing a re-insurance business or insuring against lightning, windstorm, tornado, cyclone, explosions, hailstorms, theft and collision, companies insuring automobiles and other vehicles, are so subject.

The several briefs and arguments presented in this case contain detailed discussions of numerous legislative acts, and the briefs argue all questions raised under these various legislative acts in great detail and at much length and with frequent repetitions in the various briefs. This case was taken for consideration after the rehearing was allowed at the October term, 1922, of this court, and the final briefs were not filed in this court until after the close of the February term, 1923. We do not think it necessary to review the discussion in the briefs at great length or in detail. It seems clear to us that section 30 of the act of 1869 applied only to fire, marine and inland navigation companies incorporated by the authority of any other State or government. It is also just as clear that the amendment to this section adopted in 1879 had no effect to extend the application of the section to other insurance companies. If other insurance companies are subject to taxation under section 30, it must be by virtue of legislation enacted subsequent to the act of 1869 and not directly amendatory thereof.

The argument of the petitioner is that the scope of section 30 was extended by an act approved May 31, 1879,

entitled "An act to compel all insurance companies of other States and countries, doing any kind of insurance business in this State, other than life, to comply with the general fire and marine insurance laws of this State, and to require deposits of plate glass, accident and steam boiler insurance companies." This act has only one section, and the provisions material to the present question are as follows : "That every insurance company, or association incorporated by or organized under the laws of any other State, or any foreign government must comply with the requirements of the general insurance laws of this State, governing fire, marine, and inland navigation insurance companies, doing business in the State of Illinois, before it shall be lawful for such company or association to take risks or transact any kind of insurance business in this State, other than that of life insurance, and such companies or associations, and all persons acting as agents thereof, shall be subject to the same penalties prescribed therein, for a violation of any of the provisions thereof." (2 Hurd's Stat. 1921, sec. 36, p. 1787.)

It is urged that the construction of the above act in this manner, as argued by counsel for petitioner, is supported by the so-called License act approved June 4, 1879, and entitled, "An act for the better regulation of the business of insurance, and for the protection of the citizens of this State, in their dealings with insurance companies." (2 Hurd's Stat. 1921, sec. 31, p. 1786.)

While it is true that acts passed at the same session of the General Assembly should be construed with reference to each other, we do not find that the act just referred to has any real or controlling significance with respect to the issue before the court. The two acts referred to here, passed at the same session, deal with the same subject matter. However they are to be construed, they necessarily duplicate each other to a large extent. The License act lays down certain conditions under which foreign insurance companies, associations or partnerships may do business in

Illinois. It is clear, however, that the License act does not extend, or purport to extend, the operation of section 30 of the act of 1869. The act approved May 31, 1879, must be relied upon to extend the application of section 30 of the act of 1869, if such extended application is to be established.

The act approved May 31, 1879, requires "all" insurance companies of other States and countries to comply with the general fire and marine insurance laws of this State. Neither in the title nor in the body of the act is there any reference to taxation or to the provisions of section 30 of the act of 1869. It will be noted that section 30 applies specifically to insurance companies incorporated by the authority of another State or government, while the independent act approved May 31, 1879, refers in its title to "all insurance companies" and in its body to insurance companies or associations "incorporated by or organized under the laws of any other State, or any foreign government." The latter act is broader in its terms with respect to those conducting insurance business than is the act of 1869, and only by implication, if at all, extends the application of section 30 of the act of 1869. Manifestly, the act of 1879 applied to all insurance other than life insurance. The issue here is not as to the companies to which it applied, but rather as to what provisions of then existing law it applied to such companies. We are not permitted to discover tax liability by means of remote implications, and there is neither direct evidence nor clear implication of a legislative intention to extend the application of section 30 to the other insurance companies here under consideration.

We agree with and re-affirm the view expressed as to the act of May 31, 1879, in *Fidelity and Casualty Co.* v. *Board of Review,* 264 Ill. 11, on page 17: "The act of 1879 was broad enough to extend the provisions of the act of 1869 relating to the requirements to be complied with by foreign insurance companies seeking to do business in this State to such insurance companies as appellant. The

payment of a tax on net receipts was not and could not be a condition precedent to the right to do business, and we do not think it a reasonable construction to hold that because fire, marine and inland navigation insurance companies were required by the act of 1869 to pay taxes on their net receipts, the mere extension of the requirements of that act as conditions precedent to the right to do business in this State subjected the net receipts of other insurance companies such as appellant to taxation. It seems to us clear that in the passage of the act of 1879 the legislature was dealing only with the conditions upon which it would admit other foreign insurance companies than those doing fire, marine or inland navigation insurance to do business in this State. It was undoubtedly within the province of the legislature to have required foreign insurance companies like appellant to pay taxes on their net receipts, but in our opinion it did not do so. Net receipts of foreign insurance companies not being taxable under the general Revenue act, the authority to impose such tax, which is in the nature of a special tax, must be found in some other act in clear and unambiguous language. If there is any doubt whether the language of an act was intended to authorize the taxation of certain property, the language of the act will not be extended beyond its clear import in order to make the property subject to the tax. In case of doubt such statutes are construed most strongly against the government and in favor of the citizen."

Our present view of this matter is not based merely upon the doctrine of *stare decisis*. The view here taken is based not only on that doctrine, but it is supported by reason and the best authorities on that subject. A decision should not be lightly overruled merely on the basis of remote implication. The decision in the *Fidelity Co. case* was rendered in 1914, and the General Assembly had, and now has, full authority to extend the provisions of section 30 by express

enactment. The authorities cited in support of this doctrine in the opinion in the above case support the doctrine that if there is any doubt whether the language of an act was intended to authorize the taxation of certain property, such language will not be extended beyond its clear import. The reasoning of Mr. Justice Story in *United States* v. *Wigglesworth*, 2 Story, 369, cited by this court in the *Fidelity Co. case*, applies. After stating that the Revenue act of 1841 did not intend to levy a permanent duty on indigo, the opinion continues (p. 373): "My reasons for this conclusion are these: In the first place, it is, as I conceive, a general rule in the interpretation of all statutes levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the government and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import. Revenue statutes are in no just sense either remedial laws or laws founded on any permanent public policy, and therefore are not to be liberally construed. Hence in the present case, if it be a matter of real doubt whether the intention of the act of 1841 was to levy a permanent duty on indigo, that doubt will absolve the importer from paying the duty beyond the period when it would otherwise be free." In 25 R. C. L. it is said on page 1092: "A tax cannot be imposed without clear and express words for that purpose, and where there is any ambiguity or doubt it must be resolved in favor of the person upon whom it is sought to impose the burden. It is to be fairly and justly presumed that the legislature, which possesses a power so comparatively unrestrained in its force and searching in its extent as the power of taxation, has so shaped the law as without ambiguity or doubt to bring

within it everything that it was meant should be embraced."
Again, in Cooley on Taxation (vol. I, 3d ed. p. 454,) the
author quoted with approval from Potter's Dwarris on Stat-
utes and Constitutions, (1871 ed. p. 255,) as follows: "Acts
of parliament which impose a duty upon the public will be
critically construed with reference to the particular language
in which they are expressed. When there is any ambiguity
found, the construction must be in favor of the public, be-
cause it is a general rule that where the public are to be
charged with a burden, the intention of the legislature to
impose that burden must be explicitly and distinctly shown."
This same doctrine is approved, in substance, in 36 Cyc.
1189, and also by the standard recognized authorities.

It is not a function of the court to extend the applica-
tion of statutes of this character. "Our entire revenue sys-
tem is created by and depends upon the statute for its force
and vitality." (*People* v. *Smith,* 94 Ill. 226. To the same
effect are 37 Cyc. 724, and 29 id. 1431. See, also, the rea-
soning in *Wheeler* v. *County of Wayne,* 132 Ill. 599, and
*People* v. *Kent,* 300 id. 324.) All counsel in this case con-
cur in the doctrine just laid down that the question of tax-
ation is purely a creation of statutory law, so there can be
no question that the legislature can at any time make clear
its desire as to what taxes should be levied upon insurance
companies of any class which have been incorporated under
the laws of other States or of foreign countries, and hence,
so far as the future is concerned, no hardship will arise from
construing the provisions of section 30 of the Insurance act
of 1869 as we have here construed them.

Several other questions are presented in this case for de-
cision. Is the tax in question a personal property tax and
the amount of the net receipts to be treated as personal
property by the taxing authorities, and shall the amount of
net receipts so returned by the insurance companies be sub-
ject to reduction for the purpose of equalization or other-

wise? Respondents contend that this is a personal property tax and is therefore to be returned or scheduled and reduced for taxing purposes as in case of other personal property. It appears from the answer that a deduction of about thirty-three and one-third per cent was made from the amount of net receipts as shown by the returns of companies making returns under the act, and that the remainder was entered against such companies under the provisions of section 30. The deduction was presumably for the purpose of equalizing the assessment of insurance companies with other personal property in Cook county. The questions last discussed have been decided against respondents in *People* v. *Kent, supra,* where it was held that the tax imposed under section 30 is a tax on the business of insurance, as shown by the net receipts, and not a personal property tax. This being so, there was no authority for a reduction or scaling of the amount to be taxed under section 30. The statute is direct and positive that the amount of such net receipts shall be entered on the tax list and that such amount shall be subject to the rate of taxation to which other personal property is subject.

It is also argued by the respondents that they are not required to secure the individual return of each insurance agent. By the answer they set out that the net receipts of various foreign insurance companies were returned by the general agents of such companies in the city of Chicago. Section 30 provides that the return shall be made to the proper officer of the county, town or municipality in which the agency is established, and that when so made the net receipts of "such agency" shall be entered on the books of the "county, town and municipality, and subject to the same rate of taxation * * * that other personal property is subject to at the place where located." The statute further provides that this tax is to be in lieu of all town and municipal licenses, except for maintenance of the fire department. It was the evident intention of the General Assembly, as

shown by the plain language of the act, that the municipality where the agency is located should have the benefit of the tax on the business done by foreign insurance agencies through that agency. It is clear, therefore, that the return should be made to the assessor of the town where the agency is located, in order that the net receipts for the purpose of assessing this tax may be entered on the tax books of that town. While there appears to be no good reason why a local agent may not make his return through a general agent, the return should be made to the proper taxing officer of the municipality where the agency is located, in order that such municipality may have the benefit of its proportion of such tax when collected, and if the board of review has taken the return of the general agent, that return should show the net receipts of the various agencies and their location in order that such municipality may have the benefit of the tax to be derived. It was error on the part of the respondents to accept such return of the general agent without designation of the municipality from which the net receipts were derived. The net receipts of such agency include the receipts arising out of all insurance business, including marine insurance, sold or done by any agency of a foreign insurance company subject to the act, whether sold to parties within or without the county, town or municipality where such agency is located. If sold or done by the agency in Chicago, the net receipts arising therefrom are net receipts of such agency.

It is contended by the answer of the respondents that they have no authority to compel by *mandamus* the making of returns by the agents of foreign companies. That question has been settled otherwise in *People* v. *Kent, supra,* where it was held that such agents may be compelled by writ of *mandamus* to make the return required by section 30.

It is contended by petitioner that it is the duty of respondents, as the board of review, to require the use of a certain form prepared and prescribed by the State tax com-

mission in making the return of net receipts. Respondents, on the other hand, by their answer contend that it is sufficient if this return be made as one item of net receipts under the schedule provided by the Revenue act for listing personal property. Sections 6 and 13 of the Revenue act require the use of certain forms provided in section 25 of that act for the schedule of personal property. However, this tax is not assessed under the Revenue act but under section 30 of the Fire, Marine and Inland Navigation act. Paragraph 4 of section 2 of the act of 1919 creating the tax commission, (Laws of 1919, p. 719,) provides that the tax commission shall prescribe forms of blanks for schedules, returns, etc., and that all assessing officers shall use true copies of such blank forms. The various taxing officers are under the supervision of the tax commission, and are required to use such forms as the tax commission is authorized to and does prescribe, and it can hardly be contended that the legislature did not intend that the tax-payers should not be bound by this requirement. The form known as Form 16 prescribed by the tax commission provides for a schedule of various agencies in the county, showing gross premiums, operating expenses, returned premiums, claimed deductions and net receipts. It is a summary of the various items of the insurance company going to make up the gross and net receipts. There is no objection to the adequacy or fairness of this form. The taxing officers have a right to know the general method by which the net receipts returned have been ascertained. It is in the interest of uniformity that such a form should be used, and it is within the powers of the tax commission to prescribe the form and that the insurance companies subject to section 30 should be required to use it.

Counsel in their briefs also argue that the words "net receipts," as used in section 30, are not properly construed by the various insurance companies. This court discussed at some length in *National Fire Ins. Co.* v. *Hanberg*, 215

309—5

Ill. 378, at page 381, what is meant by "net receipts," and said: "From a reading of that section we think it clearly appears those words as there used were intended by the legislature to designate the amount remaining after the operating expenses of foreign insurance companies doing business in this State had been deducted from the gross receipts of such companies,—that is, that the legislature intended all foreign insurance companies doing business in this State should be assessed, not upon their net profits, which would be the difference between their gross receipts and all sums paid out by them for operating expenses, fire losses, etc., but upon the amount remaining after deducting from their total receipts their operating expenses." The subject was more recently discussed in *People* v. *Kent, supra.* This court has also referred in a general way to the meaning of "gross receipts" and "net receipts" in *German Alliance Ins. Co.* v. *VanCleave,* 191 Ill. 410, and *State* v. *Illinois Central Railroad Co.* 246 id. 188. This court has taken the view in the *Hanberg case, supra,* that a tax under section 30 is not a tax upon the agent but a tax levied against the insurance company. It would seem, therefore, that the net receipts to be taxed are the net receipts of the company through the agency, and that the operating expenses of the company properly attributed to the respective counties or municipalities for which the returns are made may be deducted.

It is recognized that the specific items of operating expenses must vary to some extent with the manner in which the companies may conduct their business. There is no intention to limit the taxing authority in detail as to the manner of determining such net receipts. The petitioner contends that the board of review should be required to observe certain rules as set out in the petition in determining the true amount of net receipts to be listed by foreign insurance companies. There is nothing in the statute requiring that the board conduct its investigations in conformity with

any set of rules. The board is required to obtain the results sought by the statute, but however appropriate the petitioner's proposed rules may be, the board of review is a body empowered to exercise discretion as to how it shall proceed to determine the true net receipts of the insurance companies affected, and it cannot be required to use any particular rules of procedure.

It is contended that section 30 is unconstitutional because violative of the provision of section 10 of article 9 of the Illinois constitution, that "the General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." But this argument overlooks the language of section 1 of the same article, authorizing the General Assembly to tax the insurance business "in such manner as they shall from time to time direct." This court has expressly said in *Walker* v. *City of Springfield*, 94 Ill. 364, that section 30 is constitutional. Upon the basis of somewhat similar constitutional language the same view has been taken in *State* v. *Camp Sing*, 18 Mont. 128.

Our conclusion is that insurance companies other than fire, marine and inland navigation are not taxable under section 30. Companies subject to taxation thereunder are required to make returns of net receipts, which should be entered without reduction on the tax books. We are not disposed to require a re-listing of these net receipts merely because of the failure of the board to use the form prescribed by the tax commission, if such net receipts have otherwise been returned to the respondents as required by law. Under such conditions it would be useless to require re-listing.

The tax imposed by section 30 is a business tax based upon net receipts. It is not a tax levied year by year, though it is necessary to extend the annual tax rates upon the net receipts returned. An unlawful reduction of the

amount of such receipts as entered upon the tax books does not relieve the respondents of their duty nor the companies from the obligation to pay the tax imposed by law. In *People* v. *Kent, supra,* we held that the duty of an insurance agent under this section was a continuing one, which might be enforced though the statutory period had expired. We now hold that the duty of assessing and reviewing authorities is equally a continuing one, and that they may be required to enter the net receipts on the property returned in past years.

The writ will be ordered requiring respondents to enter all returns upon the tax books as provided in this opinion.

Mr. JUSTICE DUNCAN, dissenting.    *Writ awarded.*