**GREAT NORTHERN LIFE INS. CO. v. READ, Insurance Com'r of Oklahoma.**

No. 2663.

Circuit Court of Appeals, Tenth Circuit.

May 7, 1943.

John A. Johnson, of Oklahoma City, Okl. (Henry S. Griffing, of Oklahoma City, Okl., on the brief), for appellant.

Fred Hansen, Asst. Atty. Gen. of Oklahoma (Mac Q. Williamson, Atty. Gen. of Oklahoma, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Great Northern Life Insurance Company is a corporation organized under the laws of Wisconsin. It is authorized to issue policies of life, health, and disability insurance. In December, 1922, the Insurance Commissioner of Oklahoma issued to it a certificate of authority to transact business in Oklahoma and regularly thereafter issued like certificates to it for the years 1923 to 1942, inclusive. Each of such certificates by its terms expired on the last day of February next after its issue.

Sec. 1 of Art. XIX of the Oklahoma Constitution provides that no foreign insurance company shall be granted a license or be permitted to do business in Oklahoma "until it shall have complied with the laws of" Oklahoma and "shall agree to pay all such taxes and fees as may at any time be imposed by law or act of the Legislature, on foreign insurance companies, and a refusal to pay such taxes or fees shall work a forfeiture of such license."

Sec. 2 of Art. XIX of the Oklahoma Constitution provides that until otherwise provided by law, each foreign life insurance company doing business in Oklahoma shall pay to the Insurance Commissioner an entrance fee of $200 per annum; and until otherwise provided by law, an annual tax of two per cent on all premiums collected in the state, and a tax of $3 on each local agent.

Ch. 21, Art. I, § 22, O.S.L.1909, § 10478, O.S.1931, provided that every foreign insurance company doing business in Oklahoma should, on or before the last day of February in each year, report to the Insurance Commissioner the total amount of gross premiums received by it in the state during the preceding year and pay to the Insurance Commissioner an entrance fee as provided in Art. XIX of the Oklahoma Constitution, an annual tax of two per cent on all premiums collected in the state, and an annual tax of $3 on each local agent, and that any company "failing to make such returns and payments promptly and correctly" should forfeit and pay to the Insurance Commissioner, in addition to the amount of such taxes, the sum of $500, and that any company so failing for sixty days should thereafter be debarred from transacting any business in the state until such taxes and penalties had been fully paid. Sec. 10478, supra, was amended by § 1, ch. 1a, Tit. 36, p. 121, O.S.L. 1941, 36 O.S.1941 § 104. The amended Act became effective April 25, 1941. It increased the annual gross premiums tax from two per cent to four per cent.

Ch. 21, Art. I, § 21, O.S.L.1909, 36 O.S.1941 § 56, provides that the Insurance Commissioner, in December of each year, shall furnish to each insurance company authorized to do business in Oklahoma, two or more blanks in form adapted for its annual statement, and that each of such insurance companies shall annually, on or before the last day of February, file in the office of the Insurance Commissioner a statement which shall exhibit its financial condition on the thirty-first day of December of the previous year and its business of that year, and that if the Insurance Commissioner finds that all laws applicable to a company have been fully complied with, and the facts warrant, he

shall issue to such company a license or certificate of authority, subject to all requirements and conditions of law, to transact business in the state, and that such certificate shall expire on the last day of February next after its issue.

It has been the uniform administrative practice of the Insurance Commissioner, since the effective date of the 1909 General Insurance Act of Oklahoma,[1] when a foreign insurance company desires for the first time to do business in Oklahoma, to require it, among other things, to file an application for a license to expire on the last day of February next after its issue, and, on or before such date, to pay the gross premiums tax imposed by law on all premiums, less proper deductions, received by it in Oklahoma from the date of issue of its license to and including the thirty-first day of December next; and when a foreign insurance company holding a license to do business in Oklahoma during any license year desires to do business therein during the ensuing license year, to require it, among other things, (a) to file, on or before the last day of February of the current license year, an application for a license for the ensuing year, (b) to pay the gross premiums tax on all premiums, less proper deductions, received by it in Oklahoma during the preceding calendar year, as a condition precedent to the issuance of the license for the ensuing year, and (c) to pay, on or before the last day of February of the ensuing license year, the gross premiums tax on all premiums, less proper deductions, received by it in Oklahoma during the preceding calendar year; and since the effective day of such Act the Insurance Commissioner has uniformly interpreted such Act as providing for a license to expire on the last day of February next after its issue; and in issuing renewal licenses has uniformly construed it as requiring the payment, on or before the last day of February in each year, of the gross premiums tax for the right or privilege of entering Oklahoma and doing business therein during the license year expiring on that date.

Licenses issued to foreign insurance companies, by their express terms, expire on the last day of February next after their issue.

No gross premiums tax is exacted from domestic insurance companies in Oklahoma.

On February 28, 1942, the Insurance Company paid under protest the gross premiums tax required by 36 O.S.1941 § 104, being four per cent of the gross premiums collected by it, less proper deductions, for the calendar year ending December 31, 1941. It brought this action to recover such tax. From an adverse judgment, the Insurance Company has appealed.

■ It is a well-settled rule that a state, subject to the paramount authority of the Federal Constitution,[2] may withhold from a foreign corporation the privilege of doing business within its boundaries, or may grant such privilege on such conditions as it deems fit.[3] The general rule is subject to the well-settled qualification that a state may not impose conditions which require the surrender of rights guaranteed by the Federal Constitution.[4]

■ The power of a state to exact a gross premiums tax from a foreign insurance company for the privilege of doing business in a state is well settled.[5]

---

[1] Ch. 21, O.S.L. 1909.

[2] Noble v. Mitchell, 164 U.S. 367, 370, 371, 17 S.Ct. 110, 41 L.Ed. 472; Hooper v. People of State of California, 155 U. S. 648, 655, 656, 15 S.Ct. 207, 39 L.Ed. 297; Power Mfg. Co. v. Saunders, 274 U.S. 490, 496, 497, 47 S.Ct. 678, 71 L. Ed. 1165.

[3] Williams v. Standard Oil Co. of Louisiana, 278 U.S. 235, 240, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596; Hanover Fire Ins. Co. v. Harding, 272 U.S. 494, 507, 47 S.Ct. 179, 71 L.Ed. 372, 49 A. L.R. 713; Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 10 Cir., 100 F. 2d 770, 774; 20 C.J.S., Corporations, § 1810, p. 30; Id., § 1811, p. 32; Note, 49 A.L.R., p. 727.

[4] Williams v. Standard Oil Co. of Louisiana, 278 U.S. 235, 241, 49 S.Ct. 115, 73 L.Ed. 287, 60 A.L.R. 596; Terral v. Burke Const. Co., 257 U.S. 529, 532, 42 S.Ct. 188, 66 L.Ed. 352, 21 A.L.R. 186; Hanover Fire Insurance Co. v. Harding, 272 U.S. 494, 507, 47 S.Ct. 179, 71 L.Ed. 372, 49 A.L.R. 713; State of Washington v. Superior Court of Washington, 289 U. S. 361, 365, 53 S.Ct. 624, 77 L.Ed. 1256, 89 A.L.R. 653.

[5] Philadelphia Fire Ass'n v. People of State of New York, 119 U.S. 110, 119, 7 S.Ct. 108, 30 L.Ed. 342; Pittsburgh Life & Trust Co. v. Young, 172 N.C. 470, 90 S.E. 568, 570, 571; Massachusetts Bonding & Ins. Co. v. Chorn, 274 Mo. 15, 201 S.W. 1122, 1123–1125; Equitable

It is not an essential of a privilege tax that it be paid before the exercise of the privilege. Payment may precede or follow the exercise of the privilege, depending on which system the legislature chooses to adopt.[6]

In the case of New York Life Ins. Co. v. Board of County Commissioners of Oklahoma County, 155 Okl. 247, 249, 9 P.2d 936, 938, 939, 944, 82 A.L.R. 1425, the Supreme Court of Oklahoma held that the gross premiums tax was not a tax in a constitutional sense, but was a license fee or privilege tax for the privilege of doing business in the state.

It is clear, under the Oklahoma statutes, that the license of a foreign insurance company expires on the last day of February next after its issue. Art. XIX of the Oklahoma Constitution and the Oklahoma statutes, hereinabove referred to, permit of the construction that the payment of the gross premiums tax on or before the expiration of the license year on the last day of February is exacted for the privilege of doing business in the state during that license year and as a condition precedent to the issuance of a license for the ensuing year. Such has been the uniform and long-continued construction of the executive department charged with the administration of the statutes. The long-continued construction of a statute by a department of the government charged with its execution is entitled to great weight and should not be overturned without cogent reasons.[7] The Legislature of Oklahoma has convened many times during this period of administrative construction without expressing its disapproval. That silence may be regarded as acquiescence in or approval of the administrative construction.[8] Similar statutory provisions have been so construed.[9]

The Insurance Company's license which was issued in 1940 expired February 28, 1941. March 1, 1941, to February 28, 1942, constituted a new license year and a new admission into the state. It was within the power of the state to change the conditions of admission at any time as to future license years and the Insurance Company was not entitled to a license for a license year beginning after the effective date of the amendment increasing the gross premiums tax, without paying such increased tax for that year.[10]

Hanover Fire Ins. Co. v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372, 49 A.L.R. 713, strongly relied on by counsel for the Insurance Company, is distinguishable from the instant case. In that case the Hanover Company conducted the business of fire insurance in the town of South Chicago, Cook County, Illinois, through agencies which it there maintained. A statute of the state of Illinois, adopted June 28, 1919, Smith-Hurd Rev.St.Ill.1925, c. 73, § 67, Cahill's Ill.Rev.Stat.1925, c. 73, § 79, p. 1390, provided that each nonresident corporation licensed and permitted to do an insurance business in Illinois

---

Life Assur. Soc. of United States v. Commonwealth of Pennsylvania, 238 U.S. 143, 35 S.Ct. 829, 59 L.Ed. 1239; Commonwealth v. Equitable Life Assur. Soc. of United States, 239 Pa. 288, 86 A. 787; State v. Continental Assur. Co., 176 Tenn. 1, 137 S.W.2d 277, 138 S.W.2d 447; Continental Assur. Co. v. State of Tennessee, 311 U.S. 5, 61 S.Ct. 1, 85 L.Ed. 5.

6 Carpenter v. Peoples Mut. Life Ins. Co., 10 Cal.2d 299, 74 P.2d 508, 510; William A. Slater Mills v. Gilpatric, 97 Conn. 521, 117 A. 806, 808.

7 Globe Indemnity Co. v. Bruce, 10 Cir., 81 F.2d 143, 152, certiorari denied 297 U.S. 716, 56 S.Ct. 591, 80 L.Ed. 1001; City of Tulsa v. Southwestern Bell Tel. Co., 10 Cir., 75 F.2d 343, 349, certiorari denied 295 U.S. 744, 55 S.Ct. 656, 79 L.Ed. 1690; United States v. Jackson, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361; Federal Land Bank v. Warner, 292 U.S. 53, 55, 54 S.Ct. 571, 78 L.Ed. 1120, 91 A.L.R. 380.

8 Skelton v. United States, 10 Cir., 88 F.2d 599, 604; Commissioner v. McKinney, 10 Cir., 87 F.2d 811, 815; United States v. Midwest Oil Co., 236 U.S. 459, 474, 35 S.Ct. 309, 59 L.Ed. 673; Morrissey v. Commissioner, 296 U.S. 344, 355, 56 S.Ct. 289, 80 L.Ed. 263.

9 Pacific Mut. Life Ins. Co. v. Hobbs, 152 Kan. 230, 103 P.2d 854, 856, 857; Sovereign Camp, W. O. W., v. Casados, D.C.N.M., 21 F.Supp. 989.

10 Philadelphia Fire Ass'n v. People of State of New York, 119 U.S. 110, 119, 7 S.Ct. 108, 30 L.Ed. 342; Manchester Fire Ins. Co. v. Herriott, C.C.Iowa, 91 F. 711, 717–720; British-American Mortg. Co. v. Jones, 77 S.C. 443, 58 S. E. 417, 420; Note, 49 A.L.R., p. 751.

The question of the validity of the increase in the tax on gross premiums received between January 1, 1941, and April 25, 1941, is not raised and we express no opinion with respect thereto.

should pay an annual state tax for the privilege of so doing, equal to two per cent of the gross amount of the premiums received during the preceding calendar year on contracts covering risks within Illinois. The Hanover Company regularly procured a license from the Department of Trade and Commerce in Illinois and annually paid the two per cent gross premiums tax.

Sec. 30 of the Fire and Marine Insurance Act of 1869, as amended (Smith-Hurd Rev.St.Ill.1925, c. 73, § 46, Cahill's Ill.Rev. Stat.1925, c. 73, § 159, p. 1405), in part reads:

"Every agent of any insurance company, incorporated by the authority of any other state or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes— * * * that other personal property is subject to at the place where located * * *."

The General Revenue Act of Illinois, adopted in 1898 (Smith-Hurd Rev.St.Ill. 1925, c. 120, § 297, Cahill's Rev.Stat.1925, c. 120, § 329, p. 2042), required personal property to be valued at its fair cash value and set down in one column headed "Full Value," and one-half thereof to be ascertained and set down in another column headed "Assessed Value." For the year 1923, and for many years prior thereto, by what was called an equalization, systematically and intentionally carried out, the amount set down in a column headed "Full Value" was not more than sixty per cent of the actual market value of the personal property returned, and the amount set down in the column headed "Assessed Value" was not more than thirty per cent of the market value. In a long line of decisions the Supreme Court of Illinois had held that the tax imposed by § 30, supra, on the net receipts was a tax on personal property.[11] Accordingly, net receipts were treated as personal property and their assessment was by equalization and debasement reduced to thirty per cent of their full value. The Supreme Court of Illinois, in People v. Barrett, 309 Ill. 53, 139 N.E. 903, decided June 20, 1923, held that the tax under § 30 was an occupation tax and that the value of net receipts should not be reduced as in the assessment of personal property. The Hanover Company brought an action against the county treasurer and ex-officio tax collector of Cook County, in the Superior Court of Cook County, in which it prayed for an injunction to prevent the distraint of its property under a warrant for the collection of taxes alleged to be due under § 30. The Superior Court denied the relief sought and the Supreme Court of Illinois affirmed. See Hanover Fire Ins. Co. v. Carr, 317 Ill. 366, 148 N.E. 23. The case was taken by writ of error to the Supreme Court of the United States. That court held that the authority or license granted by the Department of Trade and Commerce under the Act of June 28, 1919, for which the Hanover Company paid two per cent of gross premiums received by it during the preceding year, put it upon a level with domestic insurance companies doing business of the same character; that compliance with § 30 was not a condition precedent to permission to do business in Illinois and that the state Supreme Court had so conceded; that the tax imposed under § 30 upon 100 per cent of the net receipts of foreign insurance companies admitted to do business in Illinois was a heavy discrimination in favor of domestic insurance companies of the same class and was a denial of the equal protection of the laws, and that the state could not exact as a condition of the Hanover Company's engaging in business in Illinois, that rights secured to it by the Federal Constitution might be infringed. See Hanover Fire Ins. Co. v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372, 49 A.L.R. 713. In that case, the state, having exacted a gross premiums tax for the privilege of doing business in the state, undertook to impose, in addition thereto, an unconstitutional tax.

In the instant case, the state exacts the payment on or before the twenty-eighth day of February in each year[12] of a valid privilege tax based on gross premiums for the privilege of doing business in Okla-

---

[11] Walker v. City of Springfield, 94 Ill. 364; City of Chicago v. James, 114 Ill. 479, 2 N.E. 475; City of Chicago v. Phœnix Ins. Co., 126 Ill. 276, 18 N.E. 668; National Fire Ins. Co. v. Hanberg, 215 Ill. 378, 74 N.E. 377; People v. Cosmopolitan Fire Ins. Co., 246 Ill. 442, 92 N.E. 922.

[12] In leap years the 29th day of February.

homa during the license year expiring on that date and the payment of such valid tax as a condition precedent to the issuance of a license for the ensuing license year. The Supreme Court recognized in the Hanover Fire Ins. Co. case that "at the end of the year for which the license has been granted, the state may in its discretion impose, as conditions precedent for a renewed license, past compliance with its valid laws." [13]

We accordingly conclude that 36 O.S.1941, § 104, does not violate the Fourteenth Amendment.

The judgment is, therefore, affirmed.

[13] Hanover Insurance Co. v. Harding, 272 U.S. 494, 514, 47 S.Ct. 179, 184, 71 L.Ed. 372, 49 A.L.R. 713.