HANOVER FIRE INSURANCE COMPANY *v.* HARD-
ING, COUNTY TREASURER.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 179. Argued October 18, 1926.—Decided November 23, 1926.

1. While a State may forbid a foreign corporation to do business
   within its jurisdiction, or to continue it, and may fix conditions
   under which the exercise of the privilege may be allowed, it may
   not do so by imposing upon the corporation a sacrifice of its rights
   under the Federal Constitution. Pp. 507, 509.
2. At the end of the period for which a license to do local business
   has been granted to a foreign corporation, the State may impose
   as a condition precedent to a renewed license that its valid laws
   shall have been complied with in the past. P. 514.
3. But the State may not make past compliance with an uncon-
   stitutional tax a condition precedent to renewal of the license.
   P. 514.
4. A decision of a state Supreme Court construing a local law taxing
   foreign corporations as imposing a privilege tax rather than a
   property tax, is binding on this Court; but this Court, in deter-

mining the applicability of the equal protection clause of the Fourteenth Amendment, must decide, independently, whether the tax is part of the condition upon which admission to do business in the State is permitted and is merely a regulating license by the State to protect the State and its citizens in dealing with such corporation, or whether it is a tax law for the purpose of securing contributions to the revenue of the State as they are made by other taxpayers of the State. Pp. 509, 511.

5. A foreign corporation which is duly admitted to do business in a State is to be classified with similar domestic corporations in testing the equality of the laws enacted for the purpose of raising revenue. P. 511.

6. An Illinois tax on the local net receipts of foreign insurance companies was long construed and applied as a tax on personal property; and, like other personal property taxes, partly by law and partly by custom, was assessed on only 30% of the full value; but afterwards, by a change of construction, it was held to be an occupation or privilege tax, laid on such corporations annually, as a condition to their right to do business in Illinois; with the result that all of their local net income was taxed at the rate applicable to personal property, while domestic corporations of the same class and engaged in the same kinds of business paid only a tax on their personal property, assessed at the reduced valuation. *Held* a discrimination which denied the equal protection of the laws to a foreign corporation which had renewed its license in Illinois from year to year, built up a large business and good will in that State, and had many agents there and extensive records containing information concerning its policies and policyholders. P. 516.

317 Ill. 366, reversed.

ERROR to a judgment of the Supreme Court of Illinois which affirmed a judgment dismissing the bill of the Insurance Company, a New York corporation, against Carr, the treasurer and tax collector of Cook County, Illinois. The bill prayed an injunction to prevent distraint of the plaintiff's property under a warrant for taxes due under an Illinois law which the bill challenged as unconstitutional under the state constitution and the equal protection clause of the Fourteenth Amendment. Harding, treasurer of Cook County, was substituted in thi Court for Carr, his predecessor in office.

*Mr. Charles E. Hughes,* with whom *Messrs. Charles S. Deneen, Robert J. Folonie,* and *Frederick D. Silber* were on the brief, for plaintiff in error.

. This Court, ascertaining from the decisions of the state court and from the admitted facts in the pleadings what is the operation of the Act, will determine for itself whether, in view of such operation, it infringes the Constitution. *Truax* v. *Corrigan,* 257 U. S. 312; *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *St. Louis Cotton Co.* v. *Arkansas,* 260 U. S. 346; *Crew-Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Choctaw R. Co.* v. *Harrison,* 235 U. S. 292; *Pullman Co.* v. *Kansas,* 216 U. S. 56. If the operation of the law infringes upon guaranties under the Fourteenth Amendment to the Constitution, it may not be validated by claims of waiver upon entry of plaintiff into the State or by claim of sovereign right to exclude foreign corporations. *Pullman Co.* v. *Kansas, supra; Terral* v. *Burke Const. Co.,* 257 U. S. 529; *Frost* v. *R. R. Comm.,* 271 U. S. 583; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535. .

Upon its face, § 30 of the Act of March 11, 1869, is a revenue measure imposing taxes upon property. The history of the Act, as well as its context, demonstrates that it was intended to lay a property tax and it has been consistently so administered. It was originally enacted as part of a revenue act for taxing property generally.

The tax has repeatedly been declared to be a property tax by the courts of Illinois. *Walker* v. *Springfield,* 94 Ill. 364; *Chicago* v. *Phoenix Ins. Co.,* 126 Ill. 276; *People* v. *Cosmopolitan Ins. Co.,* 246 Ill. 442. The statutes upon compliance with which insurance companies are permitted to do business in Illinois are distinct and independent enactments. The courts of Illinois have repeatedly declared that the tax here under consideration is to be administered and applied exactly as taxes upon other property. *Walker* v. *Springfield, supra; Chicago* v. *James,* 114 Ill. 479;

*Chicago* v. *Phoenix Ins. Co., supra; People* v. *Cosmopolitan Ins. Co., supra.*

The provisions of § 30 of the Act of March 11, 1869, are not conditions precedent to doing business in the State. *Fidelity Co.* v. *Board of Review,* 264 Ill. 11. The net receipts subject to taxation are personal property, and a tax thereon is a personal tax. *People* v. *Kent,* 300 Ill. 324. The provisions of § 30 are not a condition for the doing of business in Illinois by foreign insurance companies. *People* v. *Barrett,* 309 Ill. 53. The exaction is a tax imposed after the business has been done. The tax is designed to be " in lieu of the taxes that would otherwise be realized from such net receipts as are taken away." *Hanover Ins. Co.* v. *Carr,* 317 Ill. 366. The tax is declared to be a " business tax " and therefore is not a privilege tax imposed as a condition for entry into the State. It is an exaction for raising revenue for maintenance of the government. *Hanover Ins. Co.* v. *Carr, supra.* An occupation tax must operate alike on all persons and corporations engaged in the insurance business, otherwise it denies the equal protection of the laws. *Hanover Ins. Co.* v. *Carr, supra,* (dissenting opinion); *Nebraska Tel. Co.* v. *City,* 82 Neb. 59.

A consideration of the general principles applicable to a tax of the type here for review shows that it is a tax upon property subject to incidents of property taxation. It has none of the attributes of a license tax, and all of the attributes of a property tax. *People* v. *Cosmopolitan Ins. Co., supra; Thompson* v. *McLeod,* 112 Miss. 383; *Thompson* v. *Kreutzer,* 112 Miss. 165; *Brown* v. *Maryland,* 12 Wheat 444; *Phoenix Ins. Co.* v. *Omaha,* 23 Neb. 312; *New York Ins. Co.* v. *Bradley,* 83 S. C. 418; *Parker* v. *North British Ins. Co.,* 42 La. Ann. 428. The tax being one for revenue is none the less of that character because it incidentally burdens a class of business. *Bailey* v. *Drexel Co.,* 259 U. S. 20.

Taxation of the net receipts of plaintiff in error at full value, whereas other personal property was systematically and intentionally valued for assessment purposes at less than full value, operates as a denial of the equal protection of the laws. *Sioux City Bridge Co.* v. *Dakota County,* 265 U. S. 441.

The unconstitutional action of the taxing bodies, approved by the Supreme Court of Illinois, in denying the equal protection of the law to plaintiff in error, makes the tax levy and exaction illegal even if the statute be constitutional. *Greene* v. *Louisville R. R. Co.,* 244 U. S. 499; *Reagan* v. *Farmers L. & T. Co.,* 154 U. S. 362; *Tank Car Corp.* v. *Day,* 270 U. S. 367; *Myles Salt Co.* v. *Drainage Dist.,* 239 U. S. 478. Equal protection of the law is not satisfied by uniformity of tax rate where uniformity of valuation is lacking. *Greene* v. *Louisville R. R. Co., supra; Cummings* v. *Merch. Nat. Bank,* 101 U. S. 153; *Exchange Bank* v. *Hines,* 3 Oh. St. 1; *People* v. *Purdy,* 231 U. S. 373.

If the tax be considered as an excise tax upon occupation or business, it is unconstitutional as administered and applied. It is unlawful for Illinois to impose conditions for the doing of business, in derogation of the guaranties of the Fourteenth Amendment. *Western Union Tel. Co.* v. *Kansas, supra; Fidelity Co.* v *Tafoya,* 270 U. S. 426; *Frost* v. *R. R. Comm., supra; Doyle* v. *Continental Ins. Co., supra.* Plaintiff in error, having complied with all conditions precedent to entry into the State, thereby became domiciled to such an extent that, after being so lawfully in the State, it was entitled to equal protection of the laws. *Home Mining Co.* v. *New York,* 143 U. S. 305; *Erie R. R. Co.* v. *State,* 31 N. J. L. 542; Judson, Taxation, 2d ed., § 178; Waterman, Corporations, vol. 2, p. 283.

The imposition of a business tax whereby one in the business is burdened in a much greater degree than others

engaged in the same business denies equal protection of the laws. *Cotting* v. *Goddard,* 183 U. S. 79; *Southern Ry. Co.* v. *Greene,* 216 U. S. 400; *Berry* v. *City,* 320 Ill. 536; *Chalker* v. *Birmingham Ry. Co.,* 249 U. S. 522; *Truax* v. *Corrigan,* 257 U. S. 312; *Magoun* v. *Illinois Bank,* 170 U. S. 283. The classification made by the statute, as construed by the Supreme Court of Illinois, is arbitrary and illusory and has no fair or substantial relation to the proper objects sought to be accomplished by the legislature. *Royster Guano Co.* v. *Virginia,* 253 U. S. 412. See also *Mutual Life Assn.* v. *Augusta,* 109 Ga. 79; *Wright* v. *Southern Tel. Co.,* 127 Ga. 227; *Pullman Co.* v. *State,* 64 Tex. 274.

*Messrs. Benson Landon* and *Leon Hornstein,* with whom *Messrs. Francis X. Busch, Hiram T. Gilbert, Clair E. More,* and *Harris F. Williams* were on the brief, for defendant in error.

The State of Illinois had the right to prescribe the terms and conditions upon which plaintiff in error might transact business within the borders of the State. *Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410; *Liverpool Ins. Co.* v. *Massachusetts,* 10 Wall. 566; *Fire Assn.* v. *New York,* 119 U. S. 110; *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Horn Mining Co.* v. *New York,* 143 U. S. 305; *Hooper* v. *California,* 155 U. S. 648; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68; *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147; *Maine* v. *Grand Trunk R. Co.,* 142 U. S. 217; *Oliver Mining Co.* v. *Lord,* 262 U. S. 173; *St. Louis Cotton Co.* v. *Arkansas,* 260 U. S. 346; *Clement Bank* v. *Vermont,* 231 U. S. 120; *Truax* v. *Corrigan,* 257 U. S. 312. Whether the tax in question is a privilege tax or a property tax is immaterial. The State may impose upon a foreign corporation a property tax different from that imposed upon a domestic corporation.

The validity of the tax, or its character, is not determined by the mode adopted in fixing its amount. *Horn Mining Co.* v. *New York, supra; Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147; *Maine* v. *Grand Trunk, supra; Home Ins. Co.* v. *New York,* 134 U. S. 594.

The decision of the Supreme Court of Illinois that the tax provided for by § 30 of the Act of 1869 is required to be extended against the entire amount of net receipts, being a construction of a statute of that State, is binding upon this Court and furnishes no ground of relief to the complainant. *People* v. *Kent,* 300 Ill. 324; *People* v. *Barrett,* 309 Ill. 53; *Hanover Ins. Co.* v. *Carr,* 317 Ill. 366; *Truax* v. *Corrigan,* 257 U. S. 312; *St. Louis Cotton Co.* v. *Arkansas, supra;* Illinois Constitution, Art. X, § 1.

The Casualty Insurance Company Act does not operate to nullify § 30 of the Act of 1869, the State having power to discriminate between the different classes of companies. *Northwestern Ins. Co.* v. *Wisconsin,* 247 U. S. 132; *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147; *Ohio Tax Cases,* 232 U. S. 576; *Armour Co.* v. *Lacey,* 200 U. S. 226; *Singer Co.* v. *Bricknell,* 233 U. S. 304; *Connolly* v. *Union Pipe Co.,* 184 U. S. 540; *Ft. Smith Lumber Co.* v. *Arkansas,* 251 U. S. 532; *Quong Wing* v. *Kirkendall,* 223 U. S. 59; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114.

The Privilege Act of 1919 does not affect § 30 of the Act of 1869. *Horn Mining Co.* v. *New York, supra; Cheney Bros. Co.* v. *Massachusetts, supra; Baltic Mining Co.* v. *Massachusetts, supra; Liverpool Ins. Co.* v. *Massachusetts, supra; American Ref. Co.* v. *Colorado,* 204 U. S. 103; *Southern Ry. Co.* v. *Greene,* 216 U. S. 400.

The dissenting opinion is not supported by the authorities cited. *Southern Ry. Co.* v. *Greene, supra; Security Loan Assn.* v. *Albert,* 153 Ind. 198; *Cheney Bros. Co.* v.

*Massachusetts, supra; Greene* v. *Kentenia Corp.*, 175 Ky. 661; *Fire Assn.* v. *New York*, 119 U. S. 110.

Every reasonable presumption must be indulged in favor of the validity of a statute when it is attacked as unconstitutional and it must be sustained unless its invalidity is clearly demonstrated. *Sweet* v. *Rechel*, 159 U. S. 380; *Livingston County* v. *Darlington*, 101 U. S. 407; *Nicol* v. *Ames*, 173 U. S. 509; *Buttfield* v. *Stranahan*, 192 U. S. 492; *Powell* v. *Pennsylvania*, 127 U. S. 685.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a writ of error under § 237 of the Judicial Code to the judgment of the Supreme Court of Illinois, affirming a decree of the Superior Court of Cook County dismissing the bill of the Hanover Fire Insurance Company, a corporation of New York, against Patrick J. Carr, County Treasurer and *ex-officio* tax collector of Cook County, Illinois. The prayer was for an injunction to prevent the distraint of the property of the complainant under a warrant for the collection of $10,678.50, as taxes due under a law of Illinois, which law, the bill averred, denied to the complainant the equal protection of the laws under the Fourteenth Amendment of the Federal Constitution.

The defendant filed an answer denying the claims of the bill and, after a reply, the case was heard by the trial court, which made findings of fact in its decree based on a stipulation by the parties, and entered a decree as set forth below.

The law in question reads as follows:

"Foreign Companies.—Tax on net receipts. Section 30. Every agent of any insurance company, incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or munici-

pality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes— State, county, town and municipal—that other personal property is subject to at the place where located; said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed: Provided, that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax, or license fee, not exceeding two per cent. in accordance with the provisions of their respective charters, on the gross receipts of such agency, to be applied exclusively to the support of the fire department of such city." Cahill's Ill. Rev. Stat. 1925, c. 73, § 159, p. 1405.

This had been in force since 1869 and was part of the Act of March 11, of that year, entitled "An Act to incorporate and to govern fire, marine and inland navigation insurance companies doing business in the State of Illinois." The section was amended to the above form by an Act approved May 31, 1879.

By section 22 and other sections of the original Act of 1869 (Cahill's Ill. Rev. Stat. 1925, c. 73, § 150, p. 1402), it was made unlawful for a foreign insurance company to transact any insurance business in the State unless it had a prescribed amount of capital, appointed an attorney in the State on whom process of law could be served, filed a properly certified copy of the charter or deed of settlement of the insurance company, showing its name and the place where located, the amount of its capital and a detailed statement of its assets, together with its indebtedness, the losses adjusted and unpaid, the amount incurred and in process of adjustment, and a copy of its last annual report. It was required also to deposit with the Director

of Trade and Commerce of the State, for the benefit and security of the policy holders residing in the United States, a sum of not less than $200,000 in 6 per centum stock of the United States or the State of Illinois, or approved mortgage securities, with a provision that, so long as the company should continue solvent and comply with the laws of the State, it might collect the interest on these securities. The law provided that it should not be lawful for the agents of the company to transact business without procuring annually from the Director of Trade and Commerce the authority stating that such company had complied with all the requisitions of the act which applied to it; that any violation of the provisions of the act should subject the one violating it to a penalty not exceeding $500 for each violation; that such insurance companies should make annual statements of their condition and affairs to the Director of Trade and Commerce in the same manner and in the same form as similar insurance companies organized under the laws of the State, on or before the first day of March in each year for the year ending on the preceding 30th of September. The Insurance Superintendent was given authority by the same act to investigate affairs of the foreign companies, such investigation to be at the expense of the company, and, if he found the condition of any one unsound, to close up the business of the company by application to the circuit court of the county in which it had its principal office. By the same act, each foreign company was required to pay $30 for filing the charter, $10 for filing the annual statement required, and $2 for each certificate of authority for agents, and certain other fees of a similar character. Paragraphs 150, 152, 156, Cahill's Rev. Stat. Ill. 1925, c. 73.

By the Act of June 28, 1919 (Cahill's Ill. Rev. Stat. 1925, c. 73, § 79, p. 1390), it was provided that each non-resident corporation licensed and admitted to do an insur-

ance business in the State should pay an annual state tax for the privilege of so doing, equal to 2 per centum of the gross amount of premiums received during the preceding calendar year on contracts covering risks within the State after certain reductions; that the tax should be in lieu of all license fees or privilege or occupation taxes levied or assessed by any municipality in the State, and that no municipality should impose any license fee, privilege or occupation tax upon such corporation for the privilege of doing an insurance business therein, but this should not be construed to prohibit the levy and collection of any state, county or municipal taxes upon the real and personal property of such corporations, or the levying and collection of taxes authorized by § 30, above quoted.

By § 12 of the same act (Cahill's Ill. Rev. Stat., c. 73, § 90, p. 1391), it was provided that, if any corporation should fail or neglect to make any report, or refuse to pay any tax assessment within thirty days after the same became due, the Department of Trade and Commerce should· have power to revoke its license to transact the business of insurance in the State, or to suspend it until the reports were filed or the taxes paid.

The complainant insurance company complied with the requirements of § 22 and other unrepealed sections of the Act of 1869, and paid the 2 per cent. tax on its premiums received, as provided by the Act of 1919.

By the General Revenue Act of Illinois, in force since· February 25, 1898 (Cahill's Rev. Stat. 1925, c. 120, § 329, p. 2042), personal property is to be valued at its fair cash value, which value is to be set down in one column to be headed " Full Value," and one-half part thereof is to be ascertained and set down in another column headed "Assessed Value." The one-half value of all the property so ascertained and set down is to be the value for all purposes of taxation. It is further stipulated in this case and found by the trial court, that for the

year 1923, and for many years prior thereto, there has been what is called an equalization, which systematically and intentionally reduces the amount set down in the column headed "Full Value" to not more than 60 per cent. of the actual market value of the personal property returned, and, by further reducing this by 50 per cent. to make the assessed value in accord with the statute, the tax is collected only on 30 per cent. of the full value.

This suit presents the question of the validity of the assessment made by taxing officers under § 30 for the year 1922. The Supreme Court of Illinois, in *People* v. *Barrett*, 309 Ill. 53, in an opinion announced June 20, 1923, near the close of the year for which the assessment of 1922 was made, held that the tax under § 30 was an occupation tax, and that no reduction should be permitted to foreign insurance companies in the assessment for taxation of their annual net receipts. The Superior Court found that the actual amount of net cash receipts of the complainant company was $90,824, less by $45,000 than the amount reported by the Board of Review, so that its decree forbade the collection of more than $7,184.18, instead of $10,678.50, for which the warrant had issued, but denied further relief. The complainant insisted that, under the previous practice and proper construction of § 30, as a property tax with due equalization and debasement, the tax assessed should have been $2,155.24, and that this, if anything, is all that should be collected from it. The Supreme Court, by a divided court, three judges dissenting, affirmed the decree of the Superior Court. *Hanover Fire Insurance Co.* v. *Carr*, 317 Ill. 366.

The petitioner is an insurance corporation, organized under the laws of the State of New York. By its charter, it is authorized to do a business of insurance against the hazard of fire, marine perils, inland navigation, tornado, theft, explosion, property damage to automobiles and

other property by collision, crop insurance, and other similar lines of insurance, against specified hazards. There are in Illinois domestic insurance companies, which do business in all of such risks. In *Fidelity & Casualty Company* v. *Board of Review*, 264 Ill. 11, decided in 1914, the Supreme Court held that the only insurance companies whose receipts come within § 30 are foreign fire, marine and inland navigation insurance companies, doing business in the State. And if they do business in the other hazards above stated, as the complainant and petitioner is authorized to do, then they must pay taxes on their net receipts made, not only from fire, marine and inland navigation company business, but also from the other hazards.

The situation, then, is that a foreign fire, marine and inland navigation insurance company, like the petitioner, must pay at a rate per centum equivalent to that imposed on personal property, a tax on the cash amount or 100 per cent. of its net receipts from all its insurance business. A domestic fire, marine and inland navigation insurance company pays no tax on its net receipts from any kind of insurance. Both pay on their personal property other than net receipts, as of a fixed date in each year, on an assessment of 30 per cent. of its full value.

The Supreme Court of Illinois for many years held the payment of a tax on the net receipts was a tax on personal property. *Walker* v. *Springfield*, 94 Ill. 364; *City of Chicago* v. *James*, 114 Ill. 479; *Chicago* v. *Phoenix Insurance Company*, 126 Ill. 276; *National Fire Insurance Company* v. *Hanberg*, 215 Ill. 378; *People* v. *Cosmopolitan Fire Insurance Company*, 246 Ill. 442. The net receipts were the gross receipts from each agency after the operating expenses had been deducted. The losses from fire and other risks assumed were not deducted. *National Fire Insurance Co.* v. *Hanberg*, 215 Ill. 378. It is quite apparent from reading these cases that, in prac-

tice, the net receipts were treated as personal property, and their assessment was by equalization and debasement reduced from full value, as all other personal property, until the decisions in *People* v. *Kent,* 300 Ill. 324 (1921) and in *People* v. *Barrett,* 309 Ill. 53.

The general principle upon which the Supreme Court of Illinois holds the tax complained of herein to be valid, is that the payment of it is part of the condition which the petitioner as a foreign insurance company is obliged to perform, in order to maintain and retain its right to do business in the State. It was settled in the *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410, and *Horn Silver Mining Company* v. *New York,* 143 U. S. 305, that foreign corporations can not do business in a State except by the consent of the State; that the State may exclude them arbitrarily or impose such conditions as it will upon their engaging in business within its jurisdiction. But there is a very important qualification to this power of the State, the recognition and enforcement of which are shown in a number of decisions of recent years. That qualification is, that the State may not exact as a condition of the corporation's engaging in business within its limits that its rights secured to it by the Constitution of the United States may be infringed. This is illustrated, in respect of the breach of the commerce clause of the Constitution, by the cases of *Sioux Remedy Company* v. *Cope,* 235 U. S. 197, 203, and *Looney* v. *Crane Company,* 245 U. S. 178, 188. It is illustrated in cases in which a provision of a state law revoking the license of a foreign corporation for exercising its constitutional right to remove suits brought against them from the state courts to the federal courts, has been held void, *Terral* v. *Burke Construction Company,* 257 U. S. 529; in cases in which the State has vainly attempted to subject foreign corporations to a payment of a tax which is a tax not only on the property of

the corporation in the State but also on its property without the State, in violation of the due process clause of the Fourteenth Amendment, *Western Union. Telegraph Co. v. Kansas,* 216 U. S. 1; *St. Louis Cotton Compress Company v. Arkansas,* 260 U. S. 346; and finally in cases of a class to which it is contended the present case belongs, where a tax or license law operates to deny to the foreign corporation the equal protection of the laws, *Southern Railway Co. v. Greene,* 216 U. S. 400; *Air Way Corporation v. Day,* 266 U. S. 71. In the former of these last two cases, a railway corporation of another State had come into Alabama and secured a license to do business therein as an intrastate railway and, in course of that business, had acquired in the State property of a fixed and permanent nature, upon which it had paid all the taxes levied by the State. It was held that a new and additional franchise tax, for the privilege of doing business within the State, not imposed upon domestic corporations doing business in the State of the same character, violated the equal protection clause. In *Air Way Corporation v. Day,* a corporation of Delaware had much or all of its property in Ohio, where it was duly authorized to do business. Thereafter, a law of Ohio imposed five cents a share upon a certain proportion of non-par shares, authorized by the State of Delaware, which the court found to be arbitrary and not based on a classification of foreign corporations having any reasonable basis.

In the present case, there is no such permanent investment in the State of Illinois as there was in the *Greene* case in Alabama, but the averments of the bill show, that the complainant has from year to year secured renewal of its license in the State of Illinois, and has through many years past built up a large good will in the State of Illinois, and has associated with it a large number of agents in the various counties of the State, whose connection with it has resulted in a large and profitable business to

the complainant, and that it has large numbers of records containing information respecting its policy holders, the character and nature of their policies, and other records, the value of all of which would be destroyed if it were excluded from the State by a denial of the equal protection of the laws. In the *Greene* case the license was indefinite. In this case it must be renewed from year to year, but the principle is the same, that pending the period of business permitted by the State, the State must not enforce against its licensees unconstitutional burdens.

It is insisted that we must accept the construction of § 30 by the state Supreme Court, and, as the tax levied is sustained by its construction and has been held by the court to be an indispensable condition upon which the petitioner may continue to do business in Illinois, this Court is bound by both those conclusions.

It is true that the interpretation put upon such a tax law of a State by its Supreme Court is binding upon this Court as to its meaning; but it is not true that this Court, in accepting the meaning thus given, may not exercise its independent judgment in determining whether, with the meaning given, its effect would not involve a violation of the Federal Constitution. As said by this Court in *St. Louis Southwestern Railway* v. *Arkansas*, 235 U. S. 350, at page 362, where the question was whether a tax law violated the equal protection clause of the Fourteenth Amendment:

"Upon the mere question of construction we are of course concluded by the decision of the state court of last resort. But when the question is whether a tax imposed by a State deprives a party of rights secured by the Federal Constitution, the decision is not dependent upon the form in which the taxing scheme is cast, nor upon the characterization of that scheme as adopted by the state court. We must regard the substance, rather than the

form, and the controlling test is to be found in the operation and effect of the law as applied and enforced by the State."

This view has been upheld in many cases. *Western Union Telegraph Company* v. *Kansas,* 216 U. S. 1, 27; *Ludwig* v. *Western Union Telegraph Company,* 216 U. S. 146; *Sioux Remedy Company* v. *Cope,* 235 U. S. 197; *St. Louis Cotton Compress Company* v. *Arkansas,* 260 U. S. 346. In the last case, the question was whether a foreign corporation doing business in Arkansas could be required by a law of the State to pay a so-called occupation tax, upon premiums paid by it to insurance companies not doing business in Arkansas, for insurance upon property of the corporation in Arkansas, the policies having been issued and accepted outside of Arkansas. This Court held the tax invalid, as a violation of the Fourteenth Amendment. In reaching this conclusion, this Court said (p. 348):

" The Supreme Court justified the imposition as an occupation tax—that is, as we understand it, a tax upon the occupation of the defendant. But this Court although bound by the construction that the Supreme Court may put upon the statute is not bound by the characterization of it so far as that characterization may bear upon the question of its constitutional effect."

In subjecting a law of the State which imposes a charge upon foreign corporations to the test whether such a charge violates the equal protection clause of the Fourteenth Amendment, a line has to be drawn between the burden imposed by the State for the license or privilege to do business in the State, and the tax burden which, having secured the right to do business, the foreign corporation must share with all the corporations and other taxpayers of the State. With respect to the admission fee, so to speak, which the foreign corporation must pay, to become a *quasi* citizen of the State and entitled to

equal privileges with citizens of the State, the measure of the burden is in the discretion of the State, and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the Fourteenth Amendment; but, after its admission, the foreign corporation stands equal, and is to be classified with domestic corporations of the same kind.

In this class of cases, therefore, the question of the ap plication of the equal protection clause turns on the stage at which the foreign corporation is put on a level with domestic corporations, in engaging in business within the State. To leave the determination of such a question finally to a state court would be to deprive this Court of its independent judgment in determining whether a federal constitutional limitation has been infringed. While we may not question the meaning of the tax law, as interpreted by the state court, in the manner and effect in which it is to be enforced, we must re-examine the question passed upon by the state court, as to whether the law complained of is a part of the condition upon which admission to do business of the State is permitted and is merely a regulating license by the State to protect the State and its citizens in dealing with such corporation, or whether it is a tax law for the purpose of securing contributions to the revenue of the State as they are made by other taxpayers of the State. Our power and duty in this regard must follow from our decisions, and while the exact question has not heretofore been considered, there can be no doubt that our conclusion finds its complete support in the analogies of other cases in which we have had to determine what our duty is in dealing with the alleged invalidity of state legislation. *Bailey* v. *Alabama,* 219 U. S. 219, 239; *Corn Products Co.* v. *Eddy,* 249 U. S. 427, 432; *Appleby* v. *New York,* 271 U. S. 364; *Truax* v. *Corrigan,* 257 U. S. 312, 324, 325. What, therefore, we have

to decide here is whether the application of § 30 can be one of the conditions upon which the insurance company is admitted to do business in Illinois, or whether, under the law of 1919, the authority granted by the Department of Trade and Commerce, for which the company paid 2 per cent. of gross premiums received the previous year by it, put it upon a level with domestic insurance companies doing business of the same character.

It is plain that compliance with § 30 is not a condition precedent to permission to do business in Illinois. The state Supreme Court concedes this, but its reasoning that payment of the tax under the section is a condition to its doing business in Illinois, which may vary. at the will of the State without regard to taxes on similar domestic corporations, is shown by the following passages:

" The fact that a tax is a privilege tax does not necessarily require that it be paid as a condition precedent to entering the State. Such a condition, being precedent, could of course be met but once. However, the greatest financial benefit to such a company flows from the continuation of the privilege to do business. Compensation for that privilege should be based on the benefits actually derived from the business done under such privilege, and such compensation must necessarily be assessed in some manner after the business is done and the benefits thereof received. Section 30 provides the method by which the amount of this compensation shall be determined and assessed." (p. 373.)

" Section 22 of the act relating to fire, marine and inland navigation insurance, aside from specifying certain requirements imposed upon foreign insurance companies seeking to do business in this state and specifying what shall be necessary to secure the right of entry, further provides: ' Nor shall it be lawful for any agent or agents to act for any company or companies referred to in this section, directly or indirectly, in taking risks or transact-

ing the business of fire and inland navigation insurance in this state without procuring annually from the Insurance Superintendent a certificate of authority stating that such company has complied with all the requisitions of this act which apply to such companies and the name of the attorney appointed to act for the company.' The provision of section 30 requiring the return of net receipts of this tax, are a part of the 'requisitions of this act.' It is evident, therefore, from the language in section 22 quoted, that before the appellant may continue in business in this state, its agent shall procure annually from the Insurance Superintendent of the State or his successor in law, a certificate showing that it has complied with the requirements of section 30 with reference to this tax. Such certificate can not be lawfully issued without such showing. This act provides no other means of collecting such tax and no reference is made for its collection." (p. 374.)

The Court then refers to another Act which imposes a penalty for violation of § 30 by placing risks or policies of indemnity upon property in any other manner than through regularly authorized agents, and justifying a revocation of the license for period of not less than ninety days, and that it shall not be reissued until it appears that there is complete compliance with the laws " the State governing such companies, and until it has been shown that all taxes and penalties and expenses due thereunder have been paid.

"It seems clear, therefore," says the Court (p. 375), "that this tax is levied as compensation for the privilege of continuing their business in the State.

"While the Act of 1919 . . . imposes an annual state tax equal to two per cent. on the gross amount of the premiums received by any foreign insurance company during the preceding year, . . . that fact does not show that the tax imposed on the business of fire insurance by section 30 is not likewise a tax for the privilege of doing

23468°—27——33

business. The Act of 1919 requires that the tax there levied be paid to the State. Section 30 requires that the tax be apportioned among the State and the different municipalities of the situs of the agency. A valid reason is seen for this distribution of the tax. The foreign fire insurance company takes its net proceeds largely from the vicinity of its agencies and it is but just that it return to the municipality in which its agency is located something in lieu of the taxes that would otherwise be realized from such net receipts as are taken away."

The view of the Court seems to be that the constitutional necessity for equal application of the laws of the State to foreign and domestic corporations properly engaged in business, is avoided if only the State provides that failure to comply with the laws during the period, or at the end of the period, for which the license runs, justifies a revocation of the license pending the period, or a refusal to grant a new license for the following year. We do not think the State may thus relieve itself from granting the equal protection of its laws to a foreign company which has met the conditions precedent to its becoming a *quasi* domestic citizen. Of course, at the end of the year for which the license has been granted, the State may in its discretion impose, as conditions precedent for a renewed license, past compliance with its valid laws; but that does not enable the State to make past compliance with § 30 a condition precedent to a renewal of the license, if, as we find, that section violates the Fourteenth Amendment; for, as already said, while a State may forbid a foreign corporation to do business within its jurisdiction, or to continue it, it may not do so by imposing on a corporation a sacrifice of its constitutional rights. We have said in *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147, and in *Kansas City, etc., Railroad Company* v. *Stiles,* 242 U. S. 111, 118, that a State does not surrender or abridge its power to change and revise

its taxing system and tax rates by merely licensing or permitting a foreign corporation to engage in local business and acquire property within its limits, and that a State may impose a different rate of taxation upon a foreign corporation for the privilege of doing business within the State than it applies to its own corporations upon the franchise which the State grants them; but the decision in *Southern Railway Company* v. *Greene, supra,* shows that this power to change the tax imposed on a foreign corporation as a condition for the license of continuing business, is not unlimited, and that any attempt, in a renewal, to vary the terms of the original license, which, however indirectly, enforces a new condition upon the corporation and involves a deprivation of its federal constitutional rights, can not be effective. The State, in dealing with foreign corporations, may properly and without discrimination as between them and domestic companies, regulate the former by a provision that, for a failure by them to comply with any valid law governing the conduct of their business in the State, the license already granted may be revoked. That is a legitimate condition in the treatment of foreign companies which do not have property and home within the State. It is a police regulation. But the power thus to revoke a license for breach of a law can only be validly exercised if the law be a constitutional one. By compliance with the valid conditions precedent, the foreign insurance company is put on a level with all other insurance companies of the same kind, domestic or foreign, within the State; and tax laws made to apply after it has been so received into the State are to be considered laws enacted for the purpose of raising revenue for the State and must conform to the equal protection clause of the Fourteenth Amendment. This conclusion is not only in accord with our previous decisions, but is sustained by the reasoning in a satisfactory judgment of the Court of Errors and Appeals

of New Jersey. *Erie Railway Co.* v. *State*, 31 N. J. L. 531, 542, 543, 544.

We thus reach the question whether a tax imposed upon foreign fire, marine and inland navigation insurance companies on the net receipts of all their business, whether fire, marine, inland navigation or other risks, is a denial of the equal protection of the laws, when domestic insurance companies pay no taxes on such net receipts. Under the previous decisions of the Supreme Court of Illinois, when the net receipts were treated as personal property and the assessment thereon as a personal property tax subjected to the same reductions for equalization and debasement, it might well have been said that there was no substantial inequality as between domestic corporations and foreign corporations, in that the net receipts were personal property acquired during the year and removed by foreign companies out of the State, and could be required justly to yield a tax fairly equivalent to that which the domestic companies would have to pay on all their personal property, including their net receipts or what they were invested in. It was this view, doubtless, which led to the acquiescence by the state authorities and the foreign insurance companies in such a construction of § 30, and in the practice under it. But an occupation tax imposed upon 100 per cent. of the net receipts of foreign insurance companies admitted to do business in Illinois, is a heavy discrimination in favor of domestic insurance companies of the same class and in the same business, which pay only a tax on the assessment of personal property at a valuation reduced to one-half of 60 per cent. of the full value of that property. It is a denial of the equal protection of the laws. *Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350, 352, 353; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400. Analogous cases are many. *Cummings* v. *National Bank*, 101 U. S. 153; *Greene* v. *Louisville R. R. Co.*, 244 U. S. 499, 516;

*Sioux City Bridge* v. *Dakota County,* 260 U. S. 441, 445; *Taylor* v. *L. & N. R. R.,* 88 Fed. 350; *L. & N. R. R.* v. *Bosworth,* 209 Fed. 380, 452; *Washington Water Power Co.* v. *Kootenai County,* 270 Fed. 369, 374.

One argument urged against our conclusion is that the relation of a foreign insurance company to the State which permits it to do business within its limits, is contractual, and that, by coming into the State and engaging in business on the conditions imposed, it waives all constitutional restrictions, and can not object to a condition or law regulating its obligations, even though, as a statute operating *in invitum,* it may be in conflict with constitutional limitations. This argument can not prevail in view of the decisions of this Court in well considered cases. *Insurance Co.* v. *Morse,* 20 Wall. 445; *Western Union Telegraph Company* v. *Kansas,* 216 U. S. 1; *Terral* v. *Burke Construction Co.,* 257 U. S. 529; *Fidelity & Deposit Company* v. *Tafoya,* 270 U. S. 426; *Frost* v. *Railroad Commission,* 271 U. S. 583.

The judgment of the Supreme Court of Illinois must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*