**LIBERTY NAT. LIFE INS. CO. v. READ,
Insurance Commissioner of
Oklahoma.**

No. 1971.

District Court, W. D. Oklahoma.

June 13, 1938.

104

H. L. Stuart, of Oklahoma City, Okl. (Frank E. Spain and H. H. Grooms, both of Birmingham, Ala., on the brief), for plaintiff.

F. A. Rittenhouse, of Oklahoma City, Okl. (Mac Q. Williamson, Atty. Gen., of Oklahoma, and J. B. Dudley, of Oklahoma City, Okl., on the brief), for defendant.

Before WILLIAMS, Circuit Judge, and RICE and VAUGHT, District Judges.

PER CURIAM.

Submission on facts for final decree in an action to enjoin the Insurance Commissioner of Oklahoma from enforcing an order requiring plaintiff to desist from writing an insurance policy form in Oklahoma, herein referred to as the Perfection Endowment Policy.

The action was commenced on July 24, 1937, being called up on that day after notice to defendant for restraining order against the enforcement of the Commissioner's desist order. Solicitor for defendant at that time stated that the case was one for three judges, plaintiff's solicitor contending that the case could not properly come before three judges, unless and until the District Judge, after hearing, should find against plaintiff upon the first aspect of the bill wherein it is asserted that the Commissioner's order is discriminatory, oppressive, and without warrant of any law, and further, that if that issue be decided against complainant, the asserted unconstitutionality of House Bill 190, c. 51, art. 7 (Act, April 28, 1937, 36 Okl.St.Ann. § 106) amending Section 10487, Oklahoma Statutes 1931, would be for determination, adding thereto the following:

"Provided, also, that no company organized under the laws of any other state shall continue to write, nor shall any company organized under the laws of any other state be hereafter licensed to write any type or kind of policy form in this State, if the laws of the state under which it is organized do not permit the licensing of companies organized under the laws of this State, to write such form of policy in such other state. The provisions of this Section are hereby made applicable to all types of companies writing life or health and accident insurance, including stipulated premium companies, fraternal societies and mutual benefit associations.".

The District Judge then announced the case would go over until September 8, 1937, to be heard by him sitting as a District Judge, and in case it became necessary to call in two other judges, including a Circuit Judge, such court would be organized on September 10.

On September 8, 1937, the defendant filed a brief in support of its contention that the case was solely within the jurisdiction of a three-judge court. Then on suggestion the matter was passed over to a final hearing before three judges on September 10, to be disposed of as a three-judge case or a one-judge case, according as the court would deem it proper, all parties consenting thereto, and on the hearing on September 10, 1937, it was agreed by all parties that such hearing should constitute not only a hearing before a three-judge court but also before the District Court, the District Judge Vaught, sitting as such, and on the final submission plaintiff made no argument for three judges or one judge, leaving that determination for the court, but defendant's contention was that the case was one properly before a three-judge court.

Title 28, U.S.C.A. Section 380 (Judicial Code 266) is in part as follows:

"No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such State, shall be issued or granted by any justice of the Supreme Court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court or a circuit judge, and the other two may be either circuit or district judges, and unless

a majority of said three judges shall concur in granting such application. * * * The requirement respecting the presence of three judges shall also apply to the final hearing in such suit in the district court; and a direct appeal to the Supreme Court may be taken from a final decree granting or denying a permanent injunction in such suit."

■ The existence of a substantial question as to the constitutionality of a state statute, justifying such Federal Tribunal in taking such jurisdiction, must be determined from the allegations of the Bill. Ex parte Joseph Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152. See, also, Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148.

The Bill alleges that the statute under which the defendant acted is unconstitutional, praying an interlocutory injunction restraining the defendant, a state officer, in the enforcement and execution of a state statute, and has pressed for and obtained a restraining order and injunction, which has been held in force pending the rendition of a final decree in the case.

(1.) Plaintiff's complaint in sub-section 17, is as follows:

"* * * Said section 10487 of the Oklahoma Statutes as amended by House Bill No. 190 under and by virtue of which defendant purports to have acted in making said order, is void and violative of said first section of the Fourteenth Amendment to the United States Constitution in that it denies to the plaintiff the equal protection of the laws and deprives the plaintiff of its property without due process of law."

It is also averred that the statute is violative of the Oklahoma Constitution in that it delegates to other states the legislative power of Oklahoma, praying that "the court find and decree that the state statute in its application to plaintiff is unconstitutional and void" and that:

"* * * the court make a temporary restraining order, to be effective until the hearing upon plaintiff's application for interlocutory injunction, and that upon such hearing an interlocutory injunction issue, * * *"

See Stratton, Secretary of State of Illinois, v. St. Louis-Southwestern Ry. Co., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135.

In Brucker, Attorney General v. Fisher, 6th Cir., 49 F.2d 759, it is held:

"3. To justify hearing before three-judge court, and subsequent appeal direct to Supreme Court, application for interlocutory injunction must be pressed to hearing, but not necessarily decided (Jud.Code § 266 [28 U.S.C.A. § 380]).

"4. Jurisdiction of three-judge court convened to hear application for interlocutory injunction continues to end, or until application for temporary injunction has been withdrawn (Jud.Code § 266 [28 U.S.C.A. § 380]).

"5. Defendant's voluntary consent to inaction by state officers in lieu of preliminary restraining order, or interlocutory injunction, should not divest three-judge court of jurisdiction. * * *

"6. Existence of other grounds of federal jurisdiction, or fact that court placed final decision on nonconstitutional grounds, does not affect jurisdiction of statutory three-judge courts."

See Sterling, Governor of Texas, v. E. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375.

■ The three-judge court has jurisdiction. However, it is suggested in open court that the final submission should be not only to the three-judge court but also to the United States District Court and that separate decrees should be entered in each respective capacity.

The Perfection Endowment Policy is (1) a life insurance policy providing for payment of principal amount to insured's beneficiary upon his or her death; (2) an old-age endowment providing for payment of principal amount to the insured upon his or her attaining age of 85 years, and (3) a contingent mortality endowment providing for payment of principal amount to insured when his or her policy becomes oldest policy in division of his entry-age class which had fewest policies in it at time he or she became a policyholder and a death thereafter occurs in that division.

Each of the three benefits so provided in the policy covers an insurable risk. Each of the events insured is known and certain and the time of its happening, being only contingency, is predictable and insurable through application of long-established experience tables of mortality. The amount of each benefit is the face of the policy, and under universally accepted principles of cost accounting the premiums are calculated so that they, with the interest thereon, will be sufficient in each case to pay the benefit

promised upon the happening of the event maturing the claim. For the security of the policyholder adequate reserves are set aside out of premiums collected and these are calculated just as are the reserves on all life insurance policies upon the American Experience Table of Mortality with interest assumption of 3½ per cent, there being no forfeiture for lapse. The insured may at any time exchange his policy for any other policy providing other benefits and have the new policy dated back to the time of his or her original application so as to preserve his or her earlier age and lower premium rates, and upon such exchange the difference in reserves must be adjusted and paid to the insured or by the insured according as his or her new policy calls for a lesser or greater reserve than his or her Perfection Endowment Policy.

Rates and reserves on this policy were calculated under supervision of plaintiff's president, Frank P. Samford, by F. M. Speakman, consulting actuary of Insurance Department of Alabama, sometimes consulting actuary of the Oklahoma Insurance Department. Same were verified by George Dyre Eldridge, author of the Fraternal Congress Table of Mortality, declared by Oklahoma law to be an accepted standard of mortality experience, who wrote an opinion showing that they were actuarily sound, assuring permanence and certainty of result and fulfillment essential to all life insurance. The sufficiency of said rates and reserves has been demonstrated by 37 years operation. The promised benefits are plaintiff's unconditional obligation and a charge on all its assets, of which more than two million dollars is held in reserve against that obligation.

For 30 years the plan has been approved by the Insurance Department of Oklahoma. During the 13 years he has been Commissioner, defendant has always approved it and year by year has issued plaintiff a license to write it, its lawfulness or soundness never having been questioned. In the desist order the defendant asserted no objection to it except that here made, shown to be untenable, that the Oklahoma companies are prohibited by Alabama law from writing same in Alabama. Not until defendant answered herein was there any assertion that it was violative of any law.

On April 28, 1937, the Oklahoma Legislature passed what is known as said H. B. 190 prohibiting any foreign company from issuing in Oklahoma any policy form which the laws of the state of its domicile prohibit Oklahoma companies from writing in that state. On May 4, 1937, defendant advised plaintiff that he construed said law to prohibit plaintiff from writing said Perfection Endowment Policy form in Oklahoma, plaintiff contending that such Oklahoma companies were not prohibited from writing such contract in Alabama. Defendant then asked for an opinion from the Attorney General, who advised that he was unable to make interpretation of Alabama law, recommending that defendant order plaintiff to desist until the courts passed upon the question. The Attorney General of Alabama having in meantime interpreted Alabama law as entitling a foreign company to thereafter qualify in said state and write Perfection Endowment Policies in Alabama. Plaintiff asked the Attorney General of Oklahoma for a rehearing, a further presentation being made. No change was made in his recommendation. The Commissioner ordering plaintiff to desist, this action was instituted.

Plaintiff is an old line legal reserve life insurance company chartered under Alabama law, having been doing business in Oklahoma since 1907. Prior to 1923, plaintiff issued only one policy form, the Perfection Endowment Policy involved in this action. About 1923, plaintiff's president, Frank P. Samford, became the motivating force in the company, and other policy forms to meet other insurance needs were adopted and approved by the Insurance Commissioner of Oklahoma, same not being involved in this action, but have been sold in Oklahoma in volume of only 20 per cent of its total sales. Out of 10,389 of plaintiff's total policyholders in Oklahoma holding $10,145,000 of total insurance, 6,848 are holders of plaintiff's Perfection Endowment Policies insuring a total of $7,650,000. In the 7 months prior to this hearing, plaintiff had sold in Oklahoma $1,465,000 of Perfection Endowment insurance, being 79.6 per cent of its total sales in this state.

Plaintiff has permanent investments in Oklahoma, including investments in real estate, mortgage loans, policy loans, an agency force of ninety people, permanent residents of Oklahoma, 80 per cent of whose work is in the production of Perfection Endowment insurance for which they have been specially trained, who would be unable to sell enough insurance of other kinds to live on, if plaintiff is prohibited from writing its Perfection Endowment Policy form, and

who would be obliged to leave the plaintiff· and seek employment from plaintiff's competitor. Training these agents has cost the plaintiff over $30,000 and $21,000 of loans have been made to them on the security of the commissions hereafter to be paid them. Much more valuable than these is the plaintiff's permanent investment in its good name and reputation built up by more than 30 years of fair and honest dealing and promptness in the settlement of claims.

Plaintiff's competitor in writing this form of insurance, the Commissioner not proposing or intending to cause him to desist is now soliciting and ·seeking through its agent who sat during the trial with its president to take away from plaintiff its agency organization upon representation that plaintiff "has been run out of Oklahoma" leaving said employees no other opportunity to carry on their life work except through employment by said competitor.

The desist order herein sought to be enjoined is based upon no legal objection to the policy form itself nor upon any actuarial criticism, but upon an amendment to the so-called retaliatory law of Oklahoma (H. B. 190, approved April 28, 1937, 36 Okl.St. Ann. § 106) which prohibits any foreign company from writing any policy form in Oklahoma if the laws of the state of its domicile prohibit Oklahoma companies from writing therein such policy form.

Asserting that the laws of Alabama prohibit Oklahoma companies from writing the Perfection Endowment Policy form in Alabama, the Insurance Commissioner in the administration of said retaliatory law proposes by his order to prohibit plaintiff, an Alabama corporation, from writing same in Oklahoma.

There is no evidence that any Oklahoma company desired to write such policy in Alabama, or has sought and been denied a license to do so, or that any Alabama official had construed Alabama law to prohibit same.

The only evidence or advice before the Commissioner upon which to base his ruling that Oklahoma companies would be or are prohibited in Alabama, and that plaintiff, an Alabama company, must be prohibited in Oklahoma, was through brief filed with him on behalf of two Oklahoma companies, signed by their attorney, who alone (not the Attorney General or· an assistant) argued the defendant's case at the hearing. The only evidence now before this court that an Oklahoma company is prohibited by Alabama law is the testimony of the Oklahoma Commissioner and the president of an Oklahoma company, who are not shown to be lawyers versed in Alabama law.

The Bill avers that the desist order is discriminatory and singles plaintiff out to prevent it from writing this policy form, while permitting the Oklahoma companies to continue to do so, and that the desist order is arbitrary and oppressive, preventing plaintiff from carrying on its lawful business.

If the Commissioner (defendant) was mistaken in construing Alabama law as prohibiting Oklahoma companies from writing this policy form in Alabama, then wrongful restriction in administration followed. The Alabama Act of July 30, 1931, ·Gen.Acts 1931, p. 819, permitted companies writing such contract when that act was passed to continue to do so on condition not to open any new ·classes or divisions except those then containing subsisting policies.

The Alabama Act of March 3, 1937, permits any company writing this policy form to continue to do so upon condition not to open any new divisions or classes other than those containing subsisting policies when that 1937 law (March 3, 1937 Ala.Acts 1936–37, Ex.Sess., p. 221) was enacted, and provided that foreign corporations thereafter qualifying in Alabama may write the policy form upon the same conditions.

Said Act of March 3, 1937, contains a provision as follows: "Any foreign life insurance company, mutual aid association, or fraternal benefit society, order or association, * * * hereafter qualifying and becoming licensed in this state, shall be permitted to operate on this plan on the same conditions," under a proviso that said Act would become effective immediately upon approval.

On July 21, 1937 the Attorney General of Alabama ruled that the Alabama 1931 Act as amended by the Act of March 3, 1937, was effective as of March 3, 1937 and not July 30, 1931, and that same permitted foreign companies to write such policy contracts in Alabama and to classify the policyholders into divisions or classes containing subsisting policies prior to March 3, 1937.

In an opinion by the Attorney General of Alabama to the Alabama Superintend-

ent of Insurance, he construed the Alabama Act of March 3, 1937, to mean:

" * * * such foreign companies may be properly qualified and licensed to do business in Alabama, upon complying with all other requirements of the law, and that they may write such contingent mortality endowment contracts and classify them into divisions or classes which contained subsisting policies or certificates prior to March 3, 1937."

The record discloses that two Oklahoma companies are now writing such contracts in Oklahoma under the Oklahoma 1935 law, c. 51, 36 Okl.St.Ann. §§ 224, 225, which limits the writing of this policy form to those who were writing it when that law was passed. These two Oklahoma companies under all events under present administrative interpretation could qualify under the Alabama 1937 law and be licensed in that state to there write that policy form.

The Act of March 3, 1937, as the bill was first introduced in the Alabama Legislature, contained the following language:

"Any foreign life insurance company * * * hereafter qualifying and becoming licensed in this state shall be permitted to operate on this plan upon condition that such life insurance company * * * shall not hereafter establish its Alabama policyholders, or Alabama members, into divisions or classes other than the divisions and classes actually containing subsisting policies or certificates, of and prior to July 30, 1931."

· If it had been adopted in that form the Commissioner's argument at the hearing would have been tenable, because no Oklahoma company had any open divisions or classes to be added to as of July 30, 1931. Said provision was stricken out and the following language was inserted in lieu thereof:

"Any foreign life insurance company * * * hereafter qualifying and becoming licensed in this state, shall be permitted to operate on this plan upon the same conditions."

The "same conditions" referred to conditions upon which companies already writing on this plan were permitted to continue to do so, namely, the conditions that they should have requisite capital and should not establish their policyholders into divisions or classes other than the divisions and classes actually containing subsisting

policies "when this act shall become a law," it becoming a law on March 3, 1937.

At the hearing here the contention was made on the part of the Commissioner that the Alabama Act of March 3, 1937, restricted companies thereafter qualifying to the divisions or classes containing policies on July 30, 1931, and excluded the Oklahoma companies since they had no divisions as of that date.

■ The rule of construction is to give effect, if reasonably practical, to every provision of an act. That urged by the Commissioner is not in harmony with the background and contemporaneous acts in its passage, when, as shown by admissions in open court, the excerpt was stricken out on the floor of the Legislature, and the above amendment at the same time inserted.

■ The provisions of the amendatory and amended acts are to be harmonized if same can be reasonably done so as to give effect to each and every part, and not leave any part inoperative. Where an amendment is subject to two constructions, either of which is justified by its language, that is to be adopted which harmonizes all parts in construction. If there is an irreconcilable conflict, the inserted amendment should control as the latest expression of the Legislature, from which it must be presumed that the Legislature intended in adopting the same to make a change in the existing law. An amendment which changes the phraseology of the original act raises the presumption that a change in its meaning was intended and more so when the history of the act shows a change in the phraseology of the amending act between the time it was introduced and its final adoption. 59 C.J. 1097, Footnote 35.

■ The construction placed upon such act by the Alabama administrative officers in charge of its enforcement, although not controlling, may be resorted to as an aid in ascertaining the legislative intent. 59 C. J. 1022.

The Attorney General of Alabama construed the Alabama Act in accord with plaintiff's contention, that any foreign company upon complying with other conditions of the law may do business in Alabama and classify its policyholders into divisions and classes actually containing subsisting policies on the date the Alabama Act of March 3, 1937, was passed and became effective.

Many years ago the Insurance Commissioner of Minnesota sought to apply a retaliatory law so as to exclude Fidelity & Casualty Insurance Company of New York from writing more than one form of coverage in Minnesota, as the law of New York had been amended after the company had been chartered so as to prohibit such multiform coverage there.

The Minnesota Commissioner, thinking the Minnesota companies would not be permitted to write more than one form or class of risk in New York, sought in the application of a retaliatory law to prevent the New York company from so doing in Minnesota.

In State v. Fidelity & Casualty Insurance Company of New York, 39 Minn. 538, 41 N.W. 108, it is stated (page 109):

"The validity of our statute, just recited, is not questioned. We are called upon to consider whether its proper effect is to exclude this respondent from prosecuting in this state its proper corporate business of insurance as to the several classes or risks above referred to, in view of the restrictions which, as is claimed on the part of the relator, the statutes of New York impose upon corporations which might be organized in our own state for like purposes. * * * Whether that is the effect of the legislation of New York we cannot settle by any decision we may make. Only the courts of that state can authoritatively determine that. In the absence of any judicial construction of the law by the courts of that state, or of a practical administration of it, in a manner prejudicial to foreign corporations, our retaliatory act should not be deemed applicable if it is felt to be doubtful how the statutes of New York should be constructed, *even though we might be of the opinion that their probable effect is to restrict the operation of foreign corporations to a narrower field than that allowed to this respondent. * * * *"* (Italics supplied.)

Later the Insurance Commissioner of Illinois attempted to exclude the same company from writing its multiform insurance in Illinois under the retaliatory act of that state. The Supreme Court of Illinois adopted the reasoning of the Minnesota court above quoted, holding that he could not do so. People v. Fidelity & Casualty Co., 153 Ill. 25, 38 N.E. 752, 26 L.R.A. 295.

■ The action of the Insurance Commissioner in issuing the desist order should be enjoined.

(2.) As to the question of the delegation of legislative power in said H.B. 190, in which any foreign company is prohibited from writing any policy form in Oklahoma if the laws of the state of its domicile prohibit Oklahoma companies from writing such policy form in such state, the desist order prohibits plaintiff, an Alabama corporation, from writing its Perfection Endowment Policy form in Oklahoma, because, as the order erroneously alleges, Oklahoma companies are prohibited from writing this policy form in Alabama.

As interpreted by the Commissioner, if the Legislature of Alabama passes any law prohibiting issuance of any policy form in Alabama, such Alabama enactment becomes ipso facto the law of Oklahoma as to Alabama companies operating here. If the Alabama Legislature amends or repeals that Alabama law, the contention seems to be that such amendment or repeal ipso facto operates to change the law of Oklahoma governing such Alabama companies, and, therefore, that the desist order issued under a void and ineffectual delegation of legislative power. Though properly raised in order to dispose of this case, it is not essential to decide that question.

Oklahoma House Bill 190 neither sets up any standards nor does it express any general aims.

See Clark v. Port of Mobile, 67 Ala. 217; State v. Firemen's Fund Ins. Co., 223 Ala. 134, 134 So. 858, 77 A.L.R. 1486. and Hanover Fire Ins. Co. v. Harding, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372, 49 A.L.R. 713.

■ The Insurance Commissioner is not permitted to substitute his judgment for that of the Legislature, to whom has been committed the exercise of sovereign power.

■ When a standard and a rule is prescribed for a particular state of facts for the administrative officer to pass on by appropriate procedure and acts, that is not a question of regulation but a question of administration on a state of facts, and where property rights and liberty are involved, that may be reviewed, as a rule, by a court in order to afford due process of law.

■ (3.) That plaintiff, as admitted at the hearing, became domesticated in Oklahoma, having been licensed and re-licensed by the Insurance Commissioner for 30 consecutive years, and having established branch offices in Oklahoma City, Tulsa, Shawnee, and Chickasha, with 83 local

agents and seven cashiers in different parts of the state, all of whom are permanent residents, some having been in plaintiff's employ, the average period of employment being 9 years, and all of whom will be forced to seek employment elsewhere if the Commissioner's order is enforced, and having made permanent investments in the state by the purchase of real estate, and building up a going concern with good will that could only be acquired by long uninterrupted years of honest and faithful dealings with its citizenship. The plaintiff is a person within the meaning of the 14th Amendment, U.S.C.A.Const. Amend. 14, and domesticated herein, and is entitled to equal protection of the laws.

Concededly, the state has the right to exclude foreign corporations from transacting business therein. That is not controverted, but as between the plaintiff, which has become a domesticated corporation, and the plaintiff's competitor, a domestic corporation, as to the power of the state to discriminate against the former and in favor of the latter, it is contended, is subject to limitation by virtue of the 14th Amendment. That question is directly raised, but in view of the conclusion hereinbefore reached, it is not essential to pass on this question.

The conclusion is that the temporary injunction heretofore issued should be made permanent.